# CHARLESTON.

## MILLER *v.* TOWN OF ARACOMA.

Submitted January 13, 1888.—Decided January 28, 1888.

1. MUNICIPAL CORPORATIONS—ACTIONS AGAINST—PARTIES.

If, in a suit against an incorporated town, the process be executed by delivering a copy thereof to its mayor, he is not thereby made a party to the suit; and if such town fail to answer the bill it will be taken for confessed against it, although the mayor has filed an answer in the cause. (p. 612.)

2. MUNICIPAL CORPORATIONS.

Where a suit is brought by a land-holder against an incorporated

town, to enjoin it from opening a public alley through his land without having first condemned the same for public use, according to law, the owner of a lot adjoining such proposed alley, who has been instrumental in moving the public authorities of such town to open such alley, may properly be joined with such town as a defendant in such suit. (p. 613.)

3. MUNICIPAL CORPORATION—DEDICATION—PROOF—PROCEEDING TO CONDEMN LAND.

Where such town proceeds to open such alley through a man's land, without his consent, and without having first condemned the same for public use, according to law, upon the ground that the land proposed to be taken for that purpose has been dedicated to the public by the owner thereof, the burden of proof that such dedication has been made is upon the town. (p. 617.)

4. MUNICIPAL CORPORATION—DEDICATION.

Where such town claims that such alley has been, by the acts and declarations of the land-owner, dedicated to the public for that purpose, such acts and declarations must be deliberate, unequivocal, and decisive, manifesting a positive and unmistakable intention to permanently abandon his property for that specific public use. (p. 617.)

5. MUNICIPAL CORPORATION—DEDICATION.

A case in which the facts and circumstances appearing in the record were held to be insufficient to establish such dedication to the public use.

Statement of the case by WOODS, JUDGE :

On the 28th of February, 1885, J. S. Miller presented to the judge of the Circuit Court of Logan county in vacation his bill, verified by his affidavit, against Guy M. Dingess and the town of Aracoma, alleging substantially the following facts : That on the 12th of January, 1880, he purchased from one Ellis a house and parcel of land containing about half an acre, situated within the village of Logan Court House, and within the limits of the town of Aracoma, which was duly incorporated by the Circuit Court of said county, at the spring term thereof, 1884; that this land had been purchased by Ellis on the 9th of February, 1871, from one Floyd, who had purchased the same with other lands from one Lawson ; that at the time Lawson purchased the same, and long prior thereto, said parcel of land had been inclosed with a fence, and used by Lawson as his residence, and that said fence remained after the sale of the land to Ellis, to

whom Floyd had pointed it out as the boundaries of the land so sold to him; that the title-bond executed by Floyd to Ellis for sale of said land, recognized the existence of a town-plat, then lately made by Floyd, on which the land so sold to Ellis was marked as lots "A" and "B," which were the first lots sold by Floyd after making the addition to the village of Logan Court House, called the "New Plan of Aracoma;" that it was at first the intention of Floyd in making the addition to the town to have an alley between the lots sold to Ellis, which have since been numbered 24 and 25, respectively; but that Floyd then abandoned that intention, and by his title-bond to Ellis sold him both lots and the alley between them, making 212 feet front; and that there never has been any claim on the part of any one that any alley was ever made, laid off, or dedicated to the public on the upper end of his property; and that his inclosure covers only what was always claimed by Ellis under his title-bond, and which has been in his possession and the possession of the plaintiff ever since the purchase thereof by Ellis from Floyd. He further alleges that within the last two years the defendant, Dingess, purchased from Floyd a lot adjoining plaintiff's lots on the upper side thereof, and he now claims that there has been, and is an alley between his lots and plaintiff's lots, which, as Dingess claims is in the possession and within the inclosure of the plaintiff, which alley, he further claims, was dedicated by Floyd to the public; whereas the plaintiff avers that no such dedication was ever made either by grant or by public use, and that no alley has ever been claimed or used by the public at large, either within the inclosure of the plaintiff, or between his inclosure and the lot now owned by Dingess, and that no such alley as the one now claimed by him was originally shown on Floyd's plat of the town. The bill further alleges that the plaintiff and his vendor, Ellis, have been, since the 9th day of February, 1871, in peaceable and quiet possession of the ground over which Dingess claims this easement, under and by virtue of the title-bond to Ellis, claiming title to every portion of the premises inclosed by his fence, which constitutes a legal bar to any action

or proceeding to dispossess him of any part of his premises. The bill further alleged that the common council of the town of Aracoma being moved thereto by Dingess, without any right or authority to take any part of the plaintiff's said property for public use, by its order passed on the 11th of February, 1885, ordered the plaintiff to remove his inclosure, and open the alley, as claimed by Dingess, to the public use, on or before the 3d of March, 1885, which he refused to do; whereupon the common council, at a meeting thereof on the —— day of February, 1885, adopted the following order: "It appearing that J. S. Miller has refused and neglected to open the alley fenced up by him between his lots and the lots of G. M. Dingess, as was ordered by this council at a meeting held on the 3d of January, 1885, it is ordered that the superintendent of roads, streets, and alleys do cause the same to be opened for public travel." The plaintiff thereupon prayed that an injunction be awarded enjoining the defendants and each of them from trespassing upon or removing his said inclosure, or attempting to locate said alley on his premises, and for general relief. A preliminary injunction was allowed as prayed for, which was made effectual by the execution of the bond required by the order of the judge. Process was executed on the town of Aracoma by delivering a copy thereof to its mayor, J. R. Perry, who filed his answer under oath to the bill, to which the plaintiff replied generally. Omitting the formal portions thereof, the material parts of the answer of Perry, mayor of the town of Aracoma, were as follows: "Respondent has no interest in this matter, and all he has had to do with anything in the matters complained of in the plaintiff's bill, was as a member of the town authorities. He admits that the plaintiff bought of Ellis, and Ellis of Floyd, and Floyd of Lawson; but he avers that Lawson did not use this property as a residence, and the plat and the map of the town referred to by the plaintiff in his bill shows an alley on its face between lots Nos. 23 and 24, and he charges that the plaintiff moved the fence, and took in the alley in controversy." The defendant, Dingess, also answered the bill under oath, to which answer the plaintiff replied generally. This answer admits that the

77

plaintiff, and those under whom he claims, derived title to the land at the times and in the manner stated in the bill; that these lots were the first sold by Floyd after he made the plat of Aracoma, and that the lots sold to Ellis were marked thereon at the time he purchased them from Floyd, and that respondent bought his lot No. 23, adjoining the lots of the plaintiff on the 8th day of February, 1885, and that he claims that there is and was an alley between said named two lots, and that he has induced the common council of Aracoma to open such alley. Respondent denies that Lawson used this property owned by the plaintiff as a homestead, and he can not say how much was inclosed; neither does he know whether Floyd showed Ellis where to build his fence, but he avers that the plaintiff, instead of 212 feet, has 275 feet fronting on Dingess street, and that plaintiff's inclosure now includes a considerable part of the lot now occupied by this respondent, and that there is an alley on the plat between respondent's lot and the lots of the plaintiff running at right angles from Dingess street to the river; nor is it true that the plaintiff's inclosure covers only what was claimed by Ellis, or what was fenced in by him; nor that all of the alley has been fenced up, until within the last year or two. Respondent charges that the fences made by Ellis were made when he went into possession of the lots but they were mere shifts, and not made on any of the lines of said town-lots, nor did they ever run parallel with any of the boundary lines of either of the lots, the street, or the river, and if they had, they have been moved by the plaintiff, or taken down and re-built. And he further avers that there is on the plaintiff's lot No. 24 what he calls a stable,—a mere thing of round poles, which is neither square nor plumb, which fronts on neither street, alley, nor river. Respondent made part of his answer the title bond executed to him for the sale of lot No. 23, dated February 8, 1885, which describes the same " One town-lot, in Floyd's addition to the town of Aracoma, at Logan Court House, W. Va., situated on Dingess street, fronting one hundred feet thereon and running back to the Guyan river, adjoining on the southeast side the lot of James M. French, and on the northeast side a twelve foot alley, on the south-

west side of the Simpson Ellis lot, where J. S. Miller now lives." The depositions of the plaintiff and of the vendor, Simpson Ellis, were taken on behalf of the plaintiff; and the depositions of said J. R. Perry and one Dejermatt were taken on behalf of the defendants, and no other witnesses were examined. In addition to the depositions, the title-bond from Floyd to Simpson Ellis, and a plat purporting to be the plat of the town of Aracoma, were filed as evidence in the cause. On the 15th of October, 1885, the cause was heard, and the following decree was entered: "This cause came on this 15th day of October, 1885, to be finally heard on the plaintiff's bill, and the exhibits filed therewith, and the answers of the defendants, and the replication thereto, and the depositions of witnesses, and the plat of the town of Aracoma, and the title-bond of G. R. C. Floyd to Simpson Ellis, under which the plaintiff claims his right, and was argued by counsel; and the court is of opinion that there was an alley, as shown in said town-plat, between Guy M. Dingess's lot No. 23 and said plaintiff's lot No. 24, which formed a part of plan of the town which was considered by said Dingess in the purchase of his lot as a matter of convenience, and entered into the consideration of his purchase. And the court being of the further opinion that, by reason of said town-plat, the said alley of 12 feet width was dedicated to public use, and should be so held and preserved, it is therefore adjudged, ordered, and decreed that the injunction heretofore granted the plaintiff enjoining the defendant, Guy M. Dingess, and the authorities of the town of Aracoma, from proceeding to open said alley, be, and the same is hereby, dissolved, leaving the said authorities to take such steps as they may deem proper to open said alley in accordance with the plat of the said town. And it is further adjudged that the defendants recover their costs against the plaintiff in this cause expended, including the $15.00 allowed by statute, and this cause is stricken from the docket." From this decree the plaintiff has appealed to this Court. Five grounds of error have been assigned by him, which may be readily reduced to two: *First*, in regarding the answer of J. R. Perry, mayor of the town of Aracoma, as the answer of the defendant, "the town of Ara-

coma;" *second*, in dissolving the injunction, and dismissing the bill.

*J. A. Bing* for appellant.

No appearance for appellees.

WOODS, JUDGE:

It is evident from an inspection of the record that the defendant, the town of Aracoma, although regularly served with process, never appeared to or answered the bill, and therefore the same, as to it, has, in legal effect, been taken for confessed. J. R. Perry, the mayor of the said "town," is not a defendant in the cause, and therefore he had no right to appear and answer the bill, and the fact that he did so can not have the effect to make him a party to the cause, nor can his answer be taken as the answer of said corporation, which is always required to be made under its corporate seal. *Bank* v. *Canal Co.*, 1 Paige 311; *Railroad Co.* v. *City of Wheeling*, 13 Grat. 40; 2 Story Eq. Jur., § 874. The corporation is not in any manner barred by such answer, and therefore what Perry is pleased to admit or deny can not change the legal *status* of the town of Aracoma, against which the bill stands taken for confessed. The denials in his answer can not have the effect to put the plaintiff upon proof of the allegations of his bill, nor can its admissions relieve him from the necessity of proving them, where, without such admissions, it would be incumbent on him to do so. This answer ought never to have been filed, and, if the plaintiff had objected to the filing thereof, it would doubtless have been rejected; or, if the objection had been afterwards made, it would have been stricken out of the cause. But from the view we have taken of the matter, the plaintiff has not been injured, for the bill as to the town of Aracoma stands as taken for confessed; and the court did not err to the prejudice of the plaintiff, in hearing the cause on this answer in connection with the other matters mentioned in the decree. Dingess, having an interest in common with all the inhabitants of the town of Aracoma, and also a special interest peculiar to himself in opening the alley in controversy, if it ever in fact existed and has been unlawfully fenced up,

was properly a defendant in the suit. The real question involved in this controversy is whether any public alley between the lots claimed by the plaintiff and the defendant Dingess existed at the time the plaintiff's vendor, Ellis, purchased lots Nos. 25 and 26; and, if so, whether the same was ever granted or dedicated by Floyd to the town of Aracoma; and, if any such alley was so granted or dedicated, is the same within the inclosure of the plaintiff, claimed by him as his exclusive property; and, if so, has the town now such valid claim thereto as will authorize it to open the alley to the public use, without first making or securing to the plaintiff compensation therefor. It is not pretended that such alley, if it ever existed, was granted or dedicated to any corporate body or public use other than to the town of Aracoma, or that such town had any corporate existence until March, 1884. The bill, in contemplation of law, having been taken for confessed against the "town," all of its allegations as to it are admitted to be true. The answer of Dingess admits that Lawson lived upon the land owned by the plaintiff, and had the same partially enclosed before he sold the same to Floyd; that Floyd, having made a plat of the addition to the village of Logan Court-House, called the new plan the "Town of Aracoma," on which were laid off lots Nos. 25 and 26, with a 12-foot alley between them, which lots and alley he, on the 9th of February, 1871, bargained and sold to Simpson Ellis, who immediately took actual possession thereof, and so held them until he sold them to the plaintiff on the 12th of June, 1880, and that the fences made by Ellis were made by him when he went into possession of said lots, but avers that the plaintiff has moved his fences from where they were built by Ellis, and has thus enclosed a large quantity of land at both ends and along the sides of his inclosure and his fence running from Dingess street to the river. The answer of Dingess wholly fails to deny the allegation of the bill " that no dedication of such alley was ever made, either by grant or by public use, and that no alley has ever been claimed or used by the public at large, either within the inclosure of the plaintiff or between his inclosure and the lot now owned by Dingess;" nor does it deny the allegation " that the plaintiff and his vendor, Ellis,

under and by virtue of his purchase from Floyd on the 9th day of February, 1871, have been in the quiet and peaceable possession of the ground over which Dingess claims said alley,—claiming title to each and every portion of the premises inclosed by the plaintiff's fence, as aforesaid." Failing to deny these material allegations of the bill, they are admitted to be true. Section 36, ch. 125, Code. Dingess acquired his title to the lot claimed by him on the 8th day of February, 1885, precisely 14 years after Ellis acquired his title to the lots owned by the plaintiff. Three days afterwards the town-council having ascertained by a committee that the alley was inclosed by the plaintiff's fence, by an ordinance made on the 11th February, 1885, required the plaintiff to open the alley on or before the third of March, 1885, and ordered its superintendent of roads, streets and alleys to open the same on that day. This injunction was obtained, bill filed, and process issued on the 24th February, 1885. All the defendants' depositions were taken on the 20th of March, 1885, and all the depositions of the plaintiff were taken on the 30th of the same month. The answer of Dingess, and the general replication thereto, were filed in court at the April term, 1885. The cause on both sides was then ready for hearing, and no testimony was ever afterwards taken. At that time Dingess was alive, and Floyd still lives; and the fact is a little remarkable that neither of them was examined as a witness, while it is apparent that, if the pretensions of the defendants were well founded, all the facts in support of them must have been well known to Floyd, who was the common vendor of all the claimants, and therefore must have had peculiar opportunities of knowing whether the alley claimed by the defendants ever had any existence either on the plat, or on the ground, and also whether the same had been used as such by the public. It is admitted by the pleadings that the plaintiff had good and perfect title to the land in controversy, and that this title dated back to 9th February, 1871.

Was there ever any alley between the plaintiff's lot (25 now) 24, and lot 23, now claimed by Dingess? And, if so, was this alley ever dedicated to the public? It is not pretended that such alley was ever made or dedicated by the plaintiff or his

vendor, Ellis. It follows, therefore, that if it was ever so made or dedicated, it must have been done before the 9th of February, 1871, since which time the land over which it is supposed to run has been in the actual possession of the plaintiff and his vendor, claiming title thereto under said purchase from Floyd.

We will first consider whether, at the time Ellis purchased from Floyd the lots now owned by the plaintiff, there was an alley between the lots now numbered 23 and 24. It is an admitted fact that before the sale to Ellis, Floyd had laid off upon a map certain lots, with streets and alleys designated thereon ; that on this map, at the time of the sale to Ellis, were two lots numbered respectively No. 25 and No. 26, and that there was an alley 12 feet wide between them; whether there were at that time any other alleys designated on that map, does not appear. This map was present at the time Floyd sold the lots to Ellis, for in the title-bond then executed these lots are described as " a certain lot or parcel of land lying on the east side of Guyandotte river, in Logan county, West Va., and laid down on a map now in the hands of Floyd, embracing the entire two lots, and the alley between them, No. 25 & No. 26, and this day marked by Wm. Stratton, on said plat, 'A and B, sold to Simpson Ellis.'" If this map, so marked by Stratton, had been filed in the cause, and considered at the hearing; or if it had been proved by Floyd, Stratton, or any other credible witness, that the one filed by the defendants as Exhibit A, and considered at the hearing, was a copy thereof; or that the lots as now laid down on said Exhibit A, and numbered " 24 " and " 25," with the alley on the south-west side of lot No. 24, were laid down in the same manner on said map so marked by Stratton, the conclusion would be inevitable that, at the time Floyd sold lots 25 and 26, and the alley between them, that he then intended to open an alley between lots 23 and 24, as claimed by Dingess. Although it is admitted by all parties that the lots which were purchased by Ellis were then numbered " 25 " and " 26," and the same were subsequently numbered " 24 " and " 25," it is not pretended that they are different lots. It is apparent from an inspection of the map filed in the cause, marked " Exhibit A," and now

before us, that this is not the map that was in the hands of Floyd at the time he sold lots Nos. 25 and 26 to Ellis, which Stratton had marked " A and B, sold to Simpson Ellis," for no such marks now appear thereon, nor is there any indication or evidence tending to show that such indorsement had ever been made, nor to identify this as the 'map then used. It is apparent on the face of this map that it is neither the map so marked by Stratton, nor a copy thereof, but, on the contrary, it purports to be a "copy of map and notes filed in the case of Floyd and Lawson in the District Court of the U. S. for the district of W. Va." By an inspection of Exhibit A, and of the explanatory notes endorsed thereon, it appears, among other things, that lots 25 and 26, laid down thereon, are designated in said notes as the " Simpson Ellis Purchase;" and that while said lots are separated by an alley, there is no alley laid down on the south-west side of lot 25, (now 24,) but there is an alley laid down on the south-west side of lot 24, (now 23,) owned by Dingess, and between it and the adjacent lot on that side. The pretension of the defendant that this alley between the plaintiff's lot and that owned by Dingess was laid down on the map so marked by Mr. Stratton when Ellis purchased said lots, is not only unsupported by the testimony of the witnesses, but is contradicted in every essential particular by the defendant's Exhibit A. It is quite certain that no such alley was laid down on said map when it was so marked by Stratton at the time Floyd sold the lots to Ellis.

Has any such alley been made or dedicated to the public since that time? But two witnesses were examined by the defendants, and to neither of them did they propound a single question touching the existence of this alley. Only one of these witnesses mentioned or even referred to it, and what he said was stated on his cross-examination by the plaintiff. The substance of these answers so given on cross-examination is as follows: " I came to Logan Court-House in the summer of 1873, and went to Mr. Ellis, with a view to buying his property. At that time there was a shed on the upper side of the stable, next to the lot now occupied by Dingess. He showed me the lines of his lots. My impression now is that the fence joined the stable near the corner, next to the lot now occupied by

Dingess; and my recollection is that he told me at that time that the shed, or a portion of it, was on the alley." "Taking the town-plat, or what purports to be the town-plat, as a basis, and agreeably to the way the streets and alleys have been laid off thereby and surveyed, I know that the alley, as located by the committee appointed by the town council of the town of Aracoma, and as it was ordered by said council to be opened, would leave nearly or quite three-fourths of the stable above the alley." " In the conversation with Mr. Ellis at that time, my understanding was that there was a plat of the town, and that the same was laid off into lots, and if there was then no alley laid off at that place, there was to be an alley located there." "I think Simpson Ellis inclosed a piece of ground adjoining the property now occu- pied by Mr. Miller, (plaintiff,) comprising a large part, if not all, of the lot now owned by Dingess, which Ellis and others cultivated for a considerable length of time, until the fencing went down; and during that time, and since, up to the present time, no portion of it has been used by the public as an alley."

In the case of *Pierpont* v. *Town of Harrisville,* 9 W. Va. 215, this Court established the doctrine that "where there has been no public use of a street, the owner may dedicate his land to the public use for such use by acts and declarations without a deed. But in such a case these acts and declarations must be deliberate, unequivocal, and de- cided, manifesting a positive and unmistakable intention to permanently abandon his property to such public use." This doctrine was reaffirmed by this Court in *Boughner* v. *Town of Clarksburg,* 15 W. Va. 394. In *Mining Co.* v. *Town of Mason,* 23 W. Va. 211, this Court held that if an in- corporated town attempt to open streets and alleys through the land of any person against his consent, claiming that the land sought to be taken for that purpose had been dedi- cated to the use of the town, the burden of proving such dedication is upon such town.

The testimony of Ellis, taken on behalf of the plain- tiff, proves that he took possession of the lots in contro- versy in 1871, and resided there four or five years; that he inclosed the premises with a fence when he went there; that his fence on the upper side of his lot between

78

it and that occupied by Dingess was four or five feet from the stable built by him, which stands where it then stood, and that the stable and shed were on the inside of the fence as built by him; that the land immediately above his lot and adjoining the same, was also inclosed by him about two years after he went there, and was cultivated by him for two years, and afterwards by White; that this last inclosure joined the fence he had built around his lots, and there never has been an alley used by the public through the lot in question as claimed by said town, and that he never heard of such a claim until recently. The plaintiff, on his own behalf, testified substantially to the same facts, and stated : " The alley ordered to be opened by said town council, as located and staked off, is entirely on the inside of my lot, and inside of the lot as it was inclosed when I bought it, except that portion now inclosed where Dingess street formerly ran. At least two thirds of the alley, I think, is between the stable and my dwelling-house. At Dingess street, the alley, as now located, is from seven to nine feet inside of my inclosure, and at the river, from thirty to forty feet inside of my inclosure; leaving the largest portion of the stable, and the ground where the shed stood, between the alley and the property now occupied by G. M. Dingess." As already shown, it is admitted by the pleadings that the plaintiff's title to all the land claimed and held by him within his inclosure is perfect. The plaintiff and his vendor, having held and claimed all the land within his inclosure adversely for more than 10 years before this suit was brought, his title thereto, even if originally defective, has become perfect against every one, including the town of Aracoma, even though the alley had been dedicated to it before its purchase by Ellis, as the statute of limitations applies to incorporated towns and cities as well as to individuals. *City of Wheeling* v. *Campbell,* 12 W. Va. 36; *Mining Co.* v. *Mason,* 23 W. Va. 211.

The defendant's proofs in this case are clearly insufficient to prove that the alley claimed had any existence on the 9th day of February, 1871, when Ellis purchased the land, or that any such alley was ever opened by Ellis or the plaintiff afterwards, or that the public ever had any use of such

an alley at any time before or since Floyd sold said lots to Ellis. The proofs on the part of the plaintiff show beyond any reasonable doubt that the pretensions of the defendant to justify the opening of this alley against the consent of the plaintiff are entirely groundless. The facts proved are insufficient to show any dedication whatever of such alley to the public use, much less to show that either Floyd, Ellis, or the plaintiff, by any act or declaration manifested a positive and unmistakable intention to permanently abandon any part of said premises to the public use. We are therefore of opinion that the decree of the Circuit Court rendered in this cause on the 15th day of October, 1885, is erroneous, and must be reversed, with costs to the appellant, against the defendant, the town of Aracoma. And this Court now proceeding to render such decree as the Circuit Court should have rendered, it is adjudged, ordered, and decreed, that defendants, from all proceedings to open the alley in the bill mentioned, or to appropriate any of the plaintiff's land to the public use of the town of Aracoma, be forever enjoined, until, by proper proceedings, the said town acquires the right to do so, and that the defendant, the town of Aracoma, do pay to the plaintiff his costs in the Circuit Court expended.

REVERSED.

---

# CHARLESTON.

