STANTON PALMER, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed December 21, 1910—Rehearing denied Feb. 10, 1911.*

1. HIGHWAYS—*travel permissive in its origin is presumed to have continued so.* Travel over a vacant tract of land which in its beginning is entirely permissive and is for the purpose of avoiding payment of toll is presumed to continue permissive until some act done or suffered by the owner warrants a different inference.

2. SAME—*when travel is not under claim of right.* The mere fact that travel over vacant land for the purpose of avoiding a toll gate was confined to a narrow strip between a railroad track and a drainage ditch which naturally separated such strip from the remainder of the land, does not establish the character of such travel as being under claim of right.

3. SAME—*clear proof of owner's intention is necessary in order to establish common law dedication.* A common law dedication of a highway can be established only by clear and unequivocal proof of an intention of the owner to dedicate land for that purpose, and while such intention may be shown by declarations or acts which plainly and unequivocally manifest it, yet the mere non-assertion of a right, unaccompanied by other circumstances establishing the intention, is not sufficient.

4. SAME—*a dedication results from an active state of mind—effect of acceptance.* A dedication results from an active and not a passive state of mind, and if there is clear proof of an unequivocal act of dedication the dedication takes effect immediately upon acceptance by the public and no definite period of use is required.

5. SAME—*what is necessary to establish highway by prescription.* To establish a highway by prescription the user must be open and notorious, exclusive, continuous and uninterrupted for fifteen years, and must be under a claim of right, with the knowledge of the owner but without his consent.

6. SAME—*a permissive use does not ripen into a prescriptive right.* Mere travel by the public is not sufficient to establish a prescriptive right, as the user must be under a claim of right by the public and not by the mere acquiescence of the owner.

7. SAME—*what does not show notice that the traveled strip is claimed to be a highway.* The cutting of underbrush and occasional cleaning out of a ditch, and the scraping of dirt from the ditch onto a traveled track which was followed in dry weather by farmers and other persons, in crossing vacant land, to avoid a certain toll gate, do not show notice to the owner of the land that the travel along such track is under claim of right.

8. SAME—*what indicates that town authorities did not regard strip of land as a highway.* The fact that town authorities declined to lay a water pipe in a strip of vacant land until permission was obtained from the owner, and that when improving a street at the head of such strip they ran the curb across it, shutting off the strip from the street, indicates that they did not regard the strip as a street and did not intend to assume control of it.

9. SAME—*prescriptive right must fail if user is not continuous and uninterrupted for fifteen years.* If the travel over a strip of vacant land is not continuous and uninterrupted for a period of fifteen years the prescriptive right must fail, even though other elements of such right are established.

10. EVIDENCE—*what evidence does not contradict record of a special assessment proceeding.* Evidence that before any action was taken to lay a water supply-pipe in a strip of land a written permit was obtained from the land owner, and that the pipe was paid for by other persons because the owner would not pay for it, does not contradict the record of a special assessment proceeding showing the passage of an ordinance for the pipe, the levy of a special assessment against the land, the return of such assessment delinquent, and an entry by the collector showing payment by some one in the name of the owner, as his agent.

11. SAME—*collector's entry showing payment of assessment by a person as agent does not prove the agency.* An entry by the collector showing payment of a delinquent special assessment by a named person as agent of the owner of the land is of no validity to prove the agency, and is not inconsistent with evidence that the assessment was paid in the name of the land owner in behalf of other persons.

12. DEDICATION—*when action of trustees in building sidewalk is without force.* Where beneficiaries permit the trustees to manage the land for a period of years, as directed by the will, although the trust was a mere naked one and the legal title vested in the beneficiaries at the testator's death, it will be presumed (if any presumption is to be indulged) that a sidewalk built upon the land during that period was built by the trustees; but such action, without the consent of the land owners, is of no force as establishing a dedication for a street or as affecting the title to the land.

13. The court reviews the evidence in this case, and holds that the existence of the alleged street has not been established by the clear and unequivocal proof required by law.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

HERBERT H. REED, and TOLMAN, REDFIELD & SEXTON, (EDGAR BRONSON TOLMAN, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, and CLARENCE N. BOORD, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The question presented by this record is the existence of a highway over certain land and it is largely a question of fact. The appellant filed a bill for an injunction restraining the appellee from interfering with his possession and control of the strip of land in question, and the appellee answered claiming the same as a public street. A replication was filed, the cause was referred to a master to report his conclusions of law and fact, and evidence was heard by the master and reported, together with his findings. The appellant's objections having been overruled by the master, were renewed as exceptions before the chancellor, and on the motion of the appellee to confirm the master's report they were overruled, the master's report was confirmed and the bill was dismissed for want of equity.

The alleged street was never established by virtue of . any legal proceeding or formal dedication. If it ever be-

came a street it was through an implied dedication or by
prescription. The following plat shows the situation:

The tract bounded on the north by Clay avenue, (now
Argyle street,) on the west by North Robey street, on the
south by Lawrence avenue and on the east by the Chicago
and Northwestern railroad is the south-west quarter of the
south-east quarter of section 7. The railroad right of way
occupies a strip four rods wide off the east side of the tract.
Adjoining the right of way on the west is the strip eighty
feet wide which the city claims as a street, extending from
Lawrence avenue to Argyle street and indicated on the plat
by a dotted line. The appellant became the owner of this
forty-acre tract, subject to the right of way of the railroad
company, in September, 1906, by virtue of a warranty deed
from Malvina B. Armour. It was originally open prairie,
and, together with the land north and west of it, was low
and was partly under water in the spring. There was a

pond in the north-east corner. It remained unbroken and unoccupied until 1885, when Jonathan Ogden, the owner, leased it to Charles Hoffmeyer, whose tenancy continued until 1905. Prior to 1870 the neighboring country was very sparsely settled, the land, when occupied, being used for farms and gardens. Lawrence avenue was not used and no road was there. The principal roads leading into Chicago from this neighborhood were the Green Bay road (now Clark street) and Lincoln avenue. Bowmanville, which was north and west of the tract in question, was connected with the Green Bay road by the Bowmanville road (now Winnemac avenue.) All these were toll roads, and there was a toll gate at the junction of the Bowmanville and Green Bay roads. For the purpose of avoiding the payment of toll by passing around this gate, persons going to and from Chicago traveled north and south over the tract in question, so that in 1871 there was a roadway there similar to an ordinary country road. West of this road a ditch ran south across the tract from near its northern boundary. This ditch was constructed many years before there was any travel over the strip of land in question, and its purpose was the general drainage of the lands and not the road. There was also a ditch on the east side of the road, but it does not appear when, why or by whom it was constructed. Outside the track the strip was covered with grass, willows, cottonwood trees and undergrowth, and its surface remained in practically the same condition until 1905, and was used by people passing north and south, though much less in later years since the improvement of the adjacent streets. About 1873 some one interested in the new subdivision of Summerdale, lying immediately north of this tract, built a two-plank sidewalk along the west side of West Ravenswood Park, in that subdivision, extending south along the west side of the strip in question here, to a point opposite where Tuttle street appears on the plat, then turning east across the railroad through a break in

the fence to the east side of East Ravenswood Park, and thence south.

Jonathan Ogden was the owner of this tract from 1857 to his death, in 1888. He lived in Cincinnati, Ohio, and visited Chicago twice a year during the last ten years of his life. There is no evidence that he ever objected to or acquiesced in the travel over this land or that he ever knew of any such travel or ever saw the land. Apparently no attention was given the land, except to pay the taxes, until the lease to Hoffmeyer, in 1885. After that, Charles F. Babcock acted as agent for the collection of the rent until Jonathan Ogden's death, and afterward for the subsequent owners until his own death. On Jonathan Ogden's death the title vested in his three children, of whom Malvina B. Ogden was one, and on the death of her two brothers she became the sole owner. The collection of the rent, the payment of taxes and special assessments and the management of the property after Jonathan Ogden's death were attended to through the office of Armour & Co. until the conveyance to the appellant.

The travel over this tract, originating in the desire to avoid the toll gates and the payment of toll, was in its beginning entirely permissive. The whole tract lay vacant and unoccupied. The owner had no occasion to occupy it exclusively and there was nothing to induce him to enclose it. The natural effect of the drainage ditch separating the strip between it and the railroad from the rest of the land was to induce the travel to go over this strip but did not change the character of the travel. Such travel, because limited by circumstances to this narrow strip, was not, therefore, under a claim of right, but being permissive in its origin must be presumed to have continued so, and not to have been adverse until some act done or suffered by the owner warranted a different inference.

On October 26, 1875, an ordinance was passed for the laying of a six-inch water supply pipe in West Railroad

Park from Summerdale avenue to Washington avenue, to be paid for by special assessment, and thereafter, upon application to the county court, a special assessment of $526.68 against the forty-acre tract for the laying of said water pipe was confirmed, and said assessment being afterward returned delinquent, appears of record to have been paid on May 24, 1876, by "Jonathan Ogden, by S. Marrs, his agent." A resolution of the board of trustees of the town of Lake View was passed on August 20, 1883, directing the town clerk to notify the owners of abutting property to build sidewalks, in accordance with the town ordinances, within fifteen days on certain streets, including "the west side of Ravenswood Park from Lawrence avenue to Argyle street." The master found that a six-foot sidewalk was built along the west side of the west ditch in compliance with this ordinance. In 1891 an ordinance was passed for the construction of another six-foot sidewalk along the west side of West Ravenswood Park, for which a special assessment was levied against the Ogden forty acres. The master finds that a sidewalk was soon after built and that the owner put it in by private contract and paid for it.

The ordinance for the laying of the water pipe, the resolution of 1883 and the ordinance of 1891 in reference to the sidewalks are stated in the master's report to be the only formal acts proved showing notice to the owner of the adverse claim of the public to this strip as a highway. In regard to the water pipe ordinance, it was shown by Adam J. Weckler, who was at the time of the occurrence of the events in question a member of the board of trustees and of the committee on water-works, that prior to the passage of the ordinance the people of Summerdale north of the Ogden tract, represented by Robert Greer, petitioned the board of trustees to extend the water pipes to that subdivision. They were told that this could not be done because the water pipes could not be laid in private property. They then took the matter up among themselves and after-

ward brought a written permit from the owner of the property allowing the town of Lake View to lay the water pipe in this ground. After this permit was obtained the water pipe was laid, and the people of Summerdale had to pay for this pipe because the owner would not pay for it although he was willing to let it go through. The master refused to consider this evidence because the assessment and the payment by the owner were shown by the record. The evidence does not contradict the record. The validity of the judgment of confirmation in every particular is conceded. This testimony does not interfere with, qualify or limit it in any way. Whatever that judgment adjudicates remains adjudicated. But the fact that before any action was taken toward laying the pipe in this strip the permission of the owner was secured may be shown to determine whether there was any adverse claim of right. The entry showing payment by an agent was the act of the collector of the assessment and was of no validity to prove agency. Unless the testimony of this witness is rejected it must be concluded that the water pipe was laid by the permission of the owner. There is no evidence that the assessment was paid by Jonathan Ogden personally, but the evidence is consistent with its payment by someone in his name on behalf of the people of Summerdale. There is some criticism of Weckler's testimony, and it is apparent that he is confused as to the time of some of the events he testifies about, but he is not contradicted and we see no reason to doubt the substantial correctness of his statements.

There is no evidence to show that the notice directed by the resolution of 1883 was ever given by the town clerk, or that Jonathan Ogden, or any agent for him, ever had any notice of the resolution. The evidence that any sidewalk was built in compliance with this ordinance is vague. A sidewalk was built there at some time within two or three years before or after the date of the resolution, but it

would be mere conjecture to say that it was built after August 20, 1883, by the owner of this land.

The evidence as to the sidewalk claimed to have been built under the ordinance of 1891 is no more satisfactory. There is no certainty that any sidewalk was built under this ordinance. A second sidewalk was built but the evidence is indefinite as to when it was built. Jonathan Ogden had died in 1888 leaving a will, whereby he devised this land to trustees to hold for eight years after his death, when the title was to vest in his three children. They were naked trustees and the title vested at once in the children, but by agreement they permitted the land to be managed by the trustees as directed in their father's will. If any presumption is to be indulged as to the person who built the sidewalk it would be presumed that it was the trustees. It will not be contended, however, that they could, without the consent of the owners, dedicate a street or by their action affect the title to the land.

In 1888 and 1889 Lawrence avenue was macadamized and curbed, and the officials of the city of Lake View acted on the theory that there was no street in the strip in question. The improvement was paid for by special assessment, and the plan and profile of the improvement which were used in the special assessment proceeding indicated that the curb on the north side of Lawrence avenue would begin at the west line of the right of way of the railroad and extend west. The curb was put in, as indicated, across the south end of the strip and closed the strip entirely, so that there was no access to it without driving over the curb. The south half of the Ogden tract, including the strip in question, was assessed to pay for this improvement and the assessment was paid.

On May 1, 1905, the city council of the city of Chicago passed an ordinance for the construction of a sewer in West Ravenswood Park from Winnemac avenue to Clay street, to be paid for by special assessment. For the pur-

pose of making this improvement a drainage district was created, and a map thereof was prepared by the city showing that the north half of the strip in question was included in the drainage district. A special assessment was levied to pay for the improvement, and the sum of $207.93 was assessed against 232 feet of the north half of the southwest quarter of the south-east quarter, described by metes and bounds, with the west line of the railroad right of way as the east line of the premises assessed. This included the whole north half of what is now claimed to have been a street. This assessment was paid.

A common law dedication of a highway can be established only by clear and unequivocal proof of an intention of the owner to donate the land for a public street. The intention may be shown by declarations or by acts which plainly and unequivocally manifest it, but not by the mere non-assertion of a right unless the circumstances establish the intention to donate the use to the public. A dedication results from an active and not a passive state of mind; from intention and not inattention. (*Grube* v. *Nichols,* 36 Ill. 92; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 id. 561; *Town of Bethel* v. *Pruett,* 215 id. 162.) If there is clear proof of an unequivocal act of dedication the dedication becomes effectual at once upon acceptance by the public and no definite period of use is required. (*Marcy* v. *Taylor,* 19 Ill. 634; *Moffett* v. *South Park Comrs.* 138 id. 620; *Seidschlag* v. *Town of Antioch,* 207 id. 280.) The master found that "when the strip of land in question first began to be used as a way for travel it was certainly private property, and that since that time no owner of the land has done any overt act which operates to estop him from claiming that said strip is still private property." Neither party made any objection to this finding. It is in accordance with the evidence. The unequivocal proof of the intention to dedicate this ground to the public use is lacking.

It is insisted by the appellee that the evidence conclusively shows that the disputed strip has become a public highway by prescription. To establish a highway by prescription the user must be open and notorious, exclusive, continuous and uninterrupted for fifteen years, adverse,—that is, under a claim of right,—with the knowledge of the owner but without his consent. (*Rose* v. *City of Farmington,* 196 Ill. 226; *O'Connell* v. *Chicago Terminal Transfer Railroad Co.* 184 id. 308; *Township of Madison* v. *Gallagher,* 159 id. 105; *Town of Brushy Mound* v. *McClintock,* 150 id. 129.) There must be something more than mere travel by the public. The user must be under a claim of right by the public and not by the mere acquiescence of the owner. A permissive use never ripens into a prescriptive right. No prescriptive right was acquired and no period of prescription began to run in Jonathan Ogden's lifetime. The travel over his unoccupied land began without any claim of right. It was a mere convenience to the farmers and others to go across this unenclosed land, which no one considered a road, and thus avoid paying toll. In the spring and in the wet seasons this way had to be abandoned and travelers were confined to the toll roads, but in dry times it served the convenience of those desiring to use it. It was a winding track through underbrush and trees, and the little work shown to have been done occasionally in cleaning out the ditch and scraping the dirt out of it upon the road and cutting some of the underbrush cannot be regarded as notice that this track was claimed as a public highway. On the other hand, the action of the authorities of the town when they declined to lay a water pipe in the strip without getting the permission of the owner, and later, in 1888, when they ran the curb on the north side of Lawrence avenue across the strip, shutting it off from Lawrence avenue, indicates their intention not to assume control of the strip and their belief that it was not a street.

After Jonathan Ogden's death the travel was not different in character from what it was before. There was less travel after the improvement of Lawrence avenue and the other streets, and as to any work done upon this strip aside from the sidewalk, after the death of Jonathan Ogden, the record is silent. There is no evidence of any claim of public right after Jonathan Ogden's death until the passage of the sidewalk ordinance of December 28, 1891. The owners of the property then were Mrs. Armour and her brothers. They never had any knowledge of the ordinance, so far as the record shows. If it be conceded that travel continued over the alleged street and that after that date it was under a claim of right, it was not uninterrupted for fifteen years. In 1905 Joseph Weber was the tenant of the whole tract. Mrs. Armour desired to lease to Hanreddy & McGovern, contractors then engaged in building the Lawrence avenue intercepting sewer, a portion of the premises fronting 850 feet on the railroad and 205 feet deep on Lawrence avenue. She purchased from Weber a release of this portion of the premises, which she then leased to Hanreddy & McGovern, who in October, 1905, entered upon the premises so leased, built a switch track from the railroad across the strip in question, obstructed it with their machinery and by piling clay thereon, and continued in possession until the filing of this bill. If the prescriptive rights claimed by the appellee were made out in all other respects, it would therefore fail because not continuous and uninterrupted for fifteen years.

Our conclusion is that the existence of the street claimed has not been established by the clear and unequivocal proof required by law. The decree of the circuit court will therefore be reversed and the cause remanded to that court, with directions to enter a decree granting to the complainant the relief prayed for.

*Reversed and remanded, with directions.*