# CHARLESTON.

BERTHA MORLANG *et als.* v. CITY OF PARKERSBURG.

Submitted September 16, 1919.  Decided September 23, 1919.

1. DEDICATION—*Intent Necessary to Express Dedication and Implied Dedication.*

   The law recognizes two classes of dedications of a street to a city, express and implied, the intent to dedicate being essential to both, though in the latter case it may be shown by acts of the owner justifying the public authorities in believing the intention exists, where they act upon such belief, even though the owner may never have actually intended a dedication.  (p. 515).

2. SAME—*When Not Shown as to Strip Between Property Line and Building.*

   Dedication being an exceptional and peculiar mode of passing title to interest in land, the proof thereof must be full and clear; and the acts proved, which it is claimed constitute such dedication, must be inconsistent with any construction other than that of a dedication. Merely building the front of one's house back from the property line is alone not sufficient to prove intent to dedicate to the public the strip of land between the property line and the front of the house.  (p. 515).

3. MUNICIPAL CORPORATIONS—*Right of Abutting Owner to Strip Between Street Line and Building.*

A municipal corporation cannot prevent the use, by its owner, in a lawful way, of a paved strip between the street line and a building set a few feet back from the street, where it is not shown that the strip has become a part of the highway, or that the municipal authorities have so treated it.    (p. 516).

4. DEDICATION—*When Dedication of Paved Strip Not Shown by Implication.*

Where the owner of property abutting upon a city street constructs the building upon his property three and one-half feet back from the street line, and paves the same in the same manner as the sidewalk is paved, and permits the public using such sidewalk to also use such paved strip between the front of his building and the street line as a sidewalk, he will not be held to have thereby dedicated the same to the public by implication, unless it be further shown that the public authorities, with his knowledge, exercise acts of dominion thereon indicative of their belief that the same has been dedicated to the public.    (p. 516).

5. SAME—*Payment of Tax but Slight Evidence to Defeat Dedication.*

Payment of taxes assessed by a municipality upon a strip of land claimed to have been dedicated to it, while evidence tending to defeat the presumption of a dedication, is under most circumstances, of little probative force.    (p. 521).

Appeal from Circuit Court, Wood County.

Suit for injunction by Bertha Morlang and others against the city of Parkersburg. Temporary injunction granted, defendant's counter injunction dissolved, and temporary injunction made perpetual, and defendant appeals.

*Affirmed.*

*McCluer & McCluer,* for appellant.
*Van Winkle & Ambler,* for appellees.

RITZ, JUDGE:

In the year 1878 one Fred R. Rose was the owner of a lot situate in the city of Parkersburg fronting 23 feet on the east side Market street, and extending back a distance of 90 feet. This lot is part of what is known on the original plat of the city as In-lot No. 92, and is between what is now known as Fourth street and Fifth street in said city,

the north line of the same being at a distance of 49 feet from the corner of said Market street and Fifth street. At that time, to-wit, in the year 1878, there were erected upon this lot, and upon the adjoining lots to the north and south of it, frame structures which were used for various sorts of retail merchantile business. In May of that year a fire occurred which destroyed all of the buildings from the corner of Fifth street down to a point more than half way in the block, where a brick building stood owned by one Randolph Logan. Immediately thereafter the owners of the lots began to erect new buildings thereon. Rose, who owned the lot in question, as well as the lot next to it on the south, when he erected his new buildings, placed the front of them back 3½ feet from the street line. The two buildings on the two lots north of Rose, and between his lots and the corner of Fifth and Market streets, were erected upon the old line. South of Rose's the buildings were erected on a line 3½ feet from the street line down to the Logan brick building which was not destroyed. This brick building stood some distance back from the street, and was occupied as a residence. Shortly after this time Logan extended this building to the street line, and it was occupied in this condition for many years as a cigar store. In 1913 it was torn down and replaced by a large brick building, the front of which was placed at a distance of 2½ feet from the street line. South of this Logan property new buildings have been erected at various times upon the lots, the fronts of none of which were placed upon the actual street line, being from 2½ to 3 feet back therefrom. In the block between Third and Fourth streets, on the east side thereof, all of the buildings are placed three feet back from the actual line of the street. After Rose and the adjoining property owners had erected the buildings, as above indicated, they paved the space between their buildings and the curb with brick at their own expense, making the sidewalk in front of their premises 14½ feet wide instead of 11 feet as it had been prior to that time. In the year 1888 Rose sold the lot in controversy, together with the house thereon, to Theodore Morlang, the husband of one of the plaintiffs, and the father of the other

two. At that time the space in front of the building, between it and the curb, was paved with brick, and the whole thereof used as a sidewalk. Sometime after this Morlang and the owners of the adjacent properties took up the brick paving and put down concrete pavement in front of their premises. This pavement was extended clear back to the front of the buildings. The building on the lot immediately to the north of the Morlang lot extended out to the street line, that is, 3½ feet further than the Morlang building, and that condition has existed up until this time. The space of 3½ feet between the front of the Morlang building and the actual street line is in no way distinguished from the other part of the sidewalk. It is paved with the same character of material, and there are no marks to indicate where the street ends and the Morlang lot begins. A number of years ago the Morlangs built a balcony on the front of their building at the level of the second floor, extending out over this 3½ feet of space. No permission was asked of the city authorities to construct this balony, nor was any objection made to the construction thereof by the city authorities without permission, although an ordinance of the city requires that permission be obtained from the city authorities before any structure may be erected overhanging any of the streets or public places of the city. It is further shown that this lot has been assessed and taxes paid thereon at all times as a lot 23x90 feet, no deduction having ever been made therefrom because of this 3½ foot strip. It is further shown that at various times this controverted strip was used by the merchants and others doing business in the buildings along this street for the display of their wares and merchandise, for the storage to some extent of boxes and barrels thereon, but it does not appear that this was done to any greater extent than was done by other merchants in other parts of the city, where the buildings were erected flush with the street line. There is some evidence indicating that in 1878, at the time of the fire above referred to, Rose, who was then the owner of the lot in question, had conversations with some of the owners of adjoining lots in regard to setting their buildings back. Some refused to do so, and some apparently followed the example

set by Rose.  The witnesses who testify upon this question
say that they understood Rose's purpose to have been to create
better conditions for the conduct of the business carried on in
the buildings.    Some of the witnesses say that Rose ex-
pressed the view that by setting the buildings back the owners
would always have a clear space where the occupants of the
store rooms could display their merchandise without obtaining
permission from the public authorities to use part of the
street.   Not one of them testify that he ever suggested that
that strip of land left between the building line and the actual
street line was to be dedicated to the city, or become a part of
the public street.   No ordinance was ever passed by the city
of Parkersburg widening Market street at this point, nor is
there any evidence that the city or its officers ever acted
upon any supposed dedication of this strip to the city by
Rose and the adjoining property owners.   In 1914 Rose's
tenant desired to extend the front of the building out to the
street line.   He was engaged in the business of selling ladies
wearing apparel, and this business required his goods to be
displayed in such manner that passers-by would have a ready
view thereof.   This could not be with the wall of the adjoining
building on the north projecting 3½ feet.    Prior to the
time this tenant went into the building it was occupied as a
saloon.   At the request of this tenant the owners of the pro-
perty made application to the mayor of the city of Parkers-
burg for permission to erect the front upon this 3½ foot strip.
They were informed by the mayor that he would submit the
matter to the council.   This was done and the council upon
the advice of the city's attorney refused the permission,
claiming for the first time, so far as this record shows,
that this 3½ foot strip had been dedicated to the city as a
public street.   The owners of the property, when informed
by the mayor of this contention, immediately repudiated the
same, and insisted that it was their private property, and
that they would build thereon.   Much is made in argument
of the fact that they made the application to the city in-
stead of proceeding with the building as above indicated.
They say that it was their understanding that it was necessary
to get a permit from the city authorities to make any such

extensions or improvements to a building, and it was for such permission that they were applying. We cannot doubt their statements in this regard, inasmuch as the mayor to whom they made this application is not introduced by the city, and in no way contradicts their statements. Again in 1917, when new city officers came in, they took it up with the city authorities through the new mayor, for the purpose of seeing if authority would not be granted to them to make this improvement of the building without, as they say, having a lawsuit. They had a conference with him and explained the situation, submitted to him a plan of the improvements contemplated, and as they state he advised them that he saw no objection thereto, but that he would submit the same to the council for its action. This was done and the council, upon advice of the city solicitor, refused to grant the permit. This action of the council was communicated to the plaintiffs by the mayor, and he advised them that it seemed to be a difference of opinion between the city's lawyer and the plaintiffs' lawyer as to who had the right to control the 3½ foot strip; that in his view the proper way to test it would be for the plaintiffs to go on with the improvements, regardless of the city's action in refusing the permit, and when the city attempted to stop them, to apply for an injuncion to enjoin the city's interference therewith. Plaintiffs adopted the mayor's advice in this regard. These negotiations with the mayor by the plaintiffs are testified to fully by them, and are in no wise contradicted by that officer. Plaintiffs did begin to make the improvements in accordance with the plan submitted to the mayor as aforesaid. The city authorities immediately stopped them from going on with the work, and the plaintiffs thereupon filed their bill asking that the city and its agents be enjoined from interfering with them in making the improvements contemplated. A temporary injunction was granted and the improvements proceeded with, when the city made application for a counter injunction to prevent the plaintiffs from making the improvements pending the litigation. This injunction was also granted, but was subsequently modified so as to allow the improvements to be so far completed as to prevent damage to the building. Upon

the hearing of the case the circuit court dissolved the injunction granted upon the city's cross application, and perpetuated the injunction granted to the plaintiffs, holding that the strip of land belonged to the plaintiffs, and that the city had acquired no easement therein.

The chief reliance of the city upon this appeal is that there was an implied dedication of this strip of land to the city for public use, which implied dedication was accepted by the user thereof.  There is no contention that there was an express dedication, either in writing or orally, nor that there was an express acceptance of any dedication by the city.  Upon the other hand, the plaintiffs contend that there has never been any such conduct upon their part, or upon the part of their predecessors in title, in connection with this strip of land as would imply a dedication thereof to the public.  That an owner of real estate, under circumstances like this, may dedicate an easement therein to the public without any expression of his intent in that regard, or without any writing conveying the same, there is no doubt.  It must be borne in mind that title to real estate, or any interest therein, is ordinarily passed by deed or will, and while one may lose his land without any actual conveyance of the same, the acts and conduct upon his part, and upon the part of the one claiming to have acquired such title in such way, must be so unequivocal and positive as to leave little doubt that it was the intention of the owner to dedicate the same to the public use, and the intention of the public authorities to accept the same for that purpose.  McQuillin on Municipal Corporations, § 1568 and authorities there cited.  It may be said that in order to the validity of such implied dedication it must be shown that the owner intended to part with the easement in his property for the public use.  By this we do not mean that an expression of such intent upon his part need be proven.  In fact he may not have actually had such purpose in his mind, but his acts and conduct in regard to the property must be of such character that the public dealing with him upon the strength of such conduct could not but believe that his intention was to vest an easement therein in the public.  There seems to be no trouble about this general principle of law, but it

is the application of it to the facts existing here which leads to the controversy.

Counsel for the city contend that the owners' conduct in connection with and treatment of this 3½ foot space, since the year 1878, was such as to indicate the clear intent and purpose upon their part to dedicate it to the public for public use, while the plaintiffs contend that the conduct shown is entirely consistent with the permissive use thereof by the public. As above stated, it is not proven that the plaintiffs, or Rose under whom they claim, ever made any declaration of dedication of this property, nor is anything further shown than that Rose, in connection with some of the adjoining owners in erecting their buildings, left this space in front thereof. His purpose in doing so, some of the witnesses say, was to widen the sidewalk in order that the business conducted in the buildings might be more advantageously carried on. By others it is said that the purpose was to leave a space in front of the buildings so that merchants doing business therein could display their goods upon the outside without trespass upon the city streets, and without getting any leave from the city therefor. That this space was used in the display of goods there can be no question. It appears that the balcony above referred to was erected extending over this space, without permission from the city authorities. It also appears that cellar gratings were put in in front of the building in this space, without any authority from the city. The only thing which it can be said that the owners of the property have done upon which an implied dedication can rest is that they permitted the public to travel over this part of the sidewalk constructed by them at their own expense, and not under any requirement imposed upon them by the city. Will a dedication be implied from this state of facts? Counsel for the respective parties, with commendable zeal and thoroughness, have examined the authorities bearing upon this question, and have given the result of their efforts to this court, not only in oral argument at the bar, but in elaborate printed briefs. From the textbooks may be gleaned the general statements of law above declared, but we must look to the decided cases to discover the application that has been

made of these general principles to particular states of fact.

Counsel for the city cite and rely upon many cases wherein municipal corporations were held liable for damages for personal injury upon proof of a user of a street by the public, and insist that such proof is sufficient to show title to the public in the easement over the land.   There is quite a different question involved when a contest arises between the owner of the fee and the public claiming an easement thereover, than the one that arises between the public and a party injured because of the improper condition of what is used as a public street.   As between a citizen using a street laid out and worked by the public officers as a public street, it has been frequently held that proof of the exercise of acts of dominion over the street by the public is sufficient to charge liability upon a municipal corporation for an injury received because of the bad condition of such street.   Proof that the city authorities expended the public monies in improving such street, or in working thereon has been held sufficient to establish it as a public street for the purpose of recovery for an injury caused by defects, but it could not be said that such proof would be sufficient to deprive the owner of land of his title thereto unless it could be further shown that he knew of such acts of ownership by the public, and acquiesced therein.   The proof in this case on behalf of the city is far short of that which has been required in the suits to recover damages for injuries above referred to.   In those cases it has generally been required that it be shown that the public authorities have exercised dominion over the particular street or way by expending the public monies thereon in the way of improvements, or by some such unquivocal conduct.   In this case it is not shown that any public officer ever did anything indicating the intention upon the part of the city authorities to claim an interest in this strip of land.   No public monies were ever expended thereon.   No public officer ever made any declaration or committed any act which indicated an intention upon the part of the public authorities to adopt this strip of land as a public way, but even if they had it would not be conclusive against the landowner, unless done with his full knowledge and acquiesence.

The case of *Denning* v. *Roome,* 6 Wend. 651, is cited and
relied upon by counsel for appellant as controlling in this
case.   It is true that case in its facts is somewhat similar
to the case here.   However, it has its distinguishing charac-
teristics, and it is because of these elements, existing there
which do not exist here, that there was held to be an implied
dedication of the strip of land involved.   In that case a street
forty feet wide extended in front of the plaintiff's property.
This street by an ordinance was widened to the width of sixty
feet, and after the passage of this ordinance so widening
the street, which took a strip off the front of the plaintiff's
lot, the same was used in this widened condition for a period
of nineteen years.   During that time the street thus widened
had been paved by the city and an assessment for the cost
thereof made against the abutting property owners, including
the plaintiff, which assessment plaintiff paid without objec-
tion.   It will thus be seen that in that case not only was
the strip of land involved used by the public, but the public
authorities, by passing an ordinance widening the street to
sixty feet, incorporated it in the street as thus laid down, and
by paving the same exercised dominion over it entirely incon-
sistent with the plaintiff's contention that the city had no
easement therein, and by his payment of this assessment for
improving the street in its widened condition he acquiesced in
the adoption of the same as a public street.   Had the city
of Parkersburg passed an ordinance widening Market street
the additional distance of 3½ feet in front of the plaintiffs'
property, and paved the same for this additional distance,
and assessed the cost thereof against the plaintiffs' or their
predecessor, and collected such costs from them, it might
be said that by the passage of such ordinance, and the
making of such improvements, the city unequivocally claimed
the right to the street in its widened state, and by the pay-
ment of such assessment the plaintiffs, or their predecessor,
acquiesced in and approved that contention of the public auth-
orities.   These elements, however, which were controlling in
that case, do not exist here.

. This case is more like that of *Kepler* v. *The City of Rich-
mond,* (Va.) 98 S. E. 747.   In that case the plaintiff owned

a lot fronting on one of the streets of the city, and extend-
ing back along another of the city streets to an alley. More
than fifty years before the litigation arose plaintiff had built
upon this lot a building fronting on the street in front thereof,
and three other buildings fronting on the street at the side
of the lot, leaving a space extending all the way across the
rear of his lot eleven feet wide unoccupied by any building.
About the time the buildings were erected the alley at the
rear of the lot was paved by the plaintiff with cobble-
stones, including not only the public part of the alley, but the
strip off the rear of his lot above referred to.  A sidewalk
next to the building about 3 feet wide was made, and a side
entrance into the building from this walk.  This paving,
including the public alley and the strip off the rear of plain-
tiff's lot, was all of the same character.  The public used all
of the space thus paved, that part of it on the plaintiff's
lot, as well as the part thereof included in the public alley,
and it so used the same for more than fifty years.  There had
been no improvement made upon this land of the plaintiff by
the public authorities, and dominion had never been exercised
thereover by such authorities.  It will thus be seen that that
case in its facts is very nearly like the case at bar.  In
the case we have here the erection of the balcony a few
years ago, extending out over the 3½ foot strip, by the plain-
tiffs indicated upon their part that they did not consider
this strip of land as belonging to the public.  This element was
lacking in the case above cited.  In a well-reasoned opinion,
in which the authorities are numerously cited and comment-
ed upon, the Court of Appeals of Virginia held that the pub-
lic acquired no easement in the plaintiff's land by reason of
the use of it for all that time; that this use was merely
permissive, and was not inconsistent with his right to claim
the same thereafter.

The case of *Weiss* v. *Borough of South Bethlehem,* 136. Pa.
St. 294, is very similar in its facts to the case here.  There
a strip off of plaintiff's lot had been used for many years
by the public in connection with the use made thereof by
himself, but because of the fact that such public use was not
inconsistent with the idea that it was permissive upon the

part of the plaintiff an implied dedication of the easement therein was denied. A similar holding was made upon a very similar state of facts in *Griffin's Appeal,* 109 Pa. St. 150.

In the case of *Gowan* v. *Philadelphia Exchange,* 5 Watts & Sergeant 141, 40 Am. Dec., 489, the Supreme Court of Pennsylvania had before it a very similar question. The controversy there arose between adjoining property owners. The Philadelphia Exchange had erected a building upon its property leaving in front thereof a space which had been paved by it and used in connection with the sidewalk in front of the same. The public had continuously used this space for many years as though it had been part of the public sidewalk, without objection upon the part of the owners of the building, but it did not appear that the public authorities had ever laid any claim to the property, or had ever done anything thereon. The owner of the adjoining property, whose building extended out to the actual street line, made a side door opening upon this vacant space in front of the defendant's property. The defendant thereupon built a brick wall upon its property in front of this door, extending the same to the street line, blocking up plaintiff's side door. Suit was then brought to compel the removal of this wall, upon the theory that the defendant had impliedly dedicated the strip of land in front of its building to the public, and that the plaintiff had a right to have access to his building from this public street. The court, however, denied the relief, holding that there was no such state of facts as would raise a dedication by implication.

In the case of *Palmer* v. *The City of Chicago,* 248 Ill. 201, 93 N. E. 765, it appeared that the public had been allowed to travel over a strip of plaintiff's land lying vacant adjoining a public street for a long time without objection upon his part. During all of the time there had been no denial of the right of the public to travel over the land. No public street was ever extended over the same, nor had the public authorities ever exercised any dominion thereover. It was held that such public use was not inconsistent with the ownership thereof by the plaintiff, and the theory of an implied dedication was denied. In the case of *Rose* v. *The Village of*

*Elizabethtown,* 275 Ill. 167, 114 N. E. 14, a similar holding upon a very analagous state of facts to that involved here was made.

In the case of the *City of Clatskanie* v. *McDonald,* 85 Ore. 670, 167 Pac. 560, the Supreme Court of Oregon had before it the question of an implied dedication arising from the use of a strip of land in front of a building, and held that where the owner of land built his hotel back from the street with a sidewalk to the street line, and with a roof over it, and induced other builders to conform to his building line, he was not estopped from claiming the title to the actual street line in the absence of a showing that the other property owners constructed their buildings on the line because of their belief that they could use the sidewalk in front of the hotel. It was also held in that case that the fact that the whole of the lot continued to be assessed for taxation without any deduction for the part thus claimed to have been dedicated was evidence tending to rebut the presumption of the dedication. We think the probative force of such evidence would ordinarily be very slight, however.

From these authorities it would seem clear that to create a dedication by implication the owner of the real estate must have done some act from which a positive intent upon his part to dedicate the land to the public can be drawn. The fact that the public was permitted to use a strip of land under circumstances such as exist here, without objection by the owner, is not sufficient from which to imply a dedication. It is not shown that either the plaintiffs, or Rose under whom they claim, ever did anything of an affirmative character expressing an intention to dedicate, but during the time that the public have been permitted to use this strip of land it appears that the owners of it have made uses of it inconsistent with the theory that they had dedicated it to the public use. It is shown that the ordinance of the city of Parkersburg required anyone desiring to erect any structure overhanging a street or sidewalk to obtain permission to do so. The owners of this property erected such a structure overhanging this space without obtaining this permission, and without their right thereto being questioned by the auth-

orities. It is shown that they put in cellar ways on this strip without authority from the city, and without their right thereto being questioned. During all of the time that the public have been permitted to use this strip of land the plaintiffs, and Rose under whom they claim, have paid the taxes thereon to the city of Parkersburg and while this of itself is not very strong evidence, still it is some evidence that they did not intend to dedicate it to the public, and likewise that the public authorities did not accept the dedication, else they would not have collected taxes from the plaintiffs upon the land. The first time, so far as this record discloses, that the public authorities ever asserted an interest or right in this strip of land was when the plaintiffs desired permission to erect an extension to their building over the same, and instead of acquiescing in the city's claim at that time the same was resisted and contested by the plaintiffs, and their complete title to the land asserted and claimed.

Counsel for the City rely upon section 56a X. of ch. 43 of the Code, and the construction placed thereon by the case of *Yates* v. *West Grafton,* 33 W. Va. 507, to support the city's contention of an implied dedication in this case. The construction given that statute in that case does not support counsel's contention. It is quite true, as we have above asserted, that if the public was permitted to use this strip of land, and the city had accepted the same and made claim thereto, then a dedication might be implied. In that case it was held that there had been no such user by the public or acquiesence therein by the owner, or recognition or acceptance by the town authorities as constituted an easement by implication. The theory upon which acts of dominion over the property by the public officers is held to be evidence of an easement by implication is that such acts are inconsistent with any other theory than that the public has such easement in the property, and the owner being fully cognizant of such acts and acquiescing therein, will be taken without other proof to have by such acquiesence shown an intent upon his part to appropriate the property to the use which the public is making of it. Nothing of that kind, however, is shown in this case.

Finding as we do that the state of facts disclosed by this record is not sufficient to show an implied dedication of. this strip of land to the public, the court's decree perpetuating the injunction inhibiting the defendant from interfering with the plaintiffs in the construction of their addition thereon is clearly right, and the same is.affirmed.

*Affirmed.*