EDWARD LUMLEY and ROSE L. LUMLEY, Appellants, *v.* VILLAGE OF HAMBURG, Respondent.

Fourth Department, January 9, 1918.

**Waters and watercourses — suit to enjoin village from polluting water, running in open ditches through plaintiff's land, by introduction of sewage therein, and from causing said ditches to overflow — open ditches may constitute watercourses to which rights of riparian owners attach — right to discharge surface water — pollution of fresh water streams.**

In a suit to enjoin a village from polluting water running in open ditches through the plaintiffs' farm by the introduction of sewage therein and from collecting from its paved streets through its sewer system water and sewage in such quantities as to overflow the plaintiffs' land under cultivation, and to recover damages, it appeared that part of the plaintiffs' farm consisted of low land, which had been wet and swampy, and was drained by open ditches which had existed as such for many years, and that the defendant's sewer system opened into these ditches.

*Held*, on all the evidence, that the main ditch through plaintiffs' land overflowed its banks and injured the plaintiffs' crops owing to the fact that the defendant, through its sewer system, overtaxed the capacity of the ditch;

That the defendant permits sewage to pollute the waters passing through the plaintiffs' lands, which should not be permitted to continue;

That a judgment dismissing the complaint on the merits should be reversed and a new trial granted.

Open ditches constructed to drain low lands and used for many years for such purpose become watercourses, and the owners of the land through which they run are entitled to the same benefits and are subject to the same burdens as attach to riparian owners on ordinary watercourses.

Such riparian owners are obligated to keep free and unobstructed the watercourses through their lands.

Surface waters may be collected and discharged in such a watercourse, but not in such quantities as to overflow the banks.

Fresh water streams may not be polluted. The right to pollute such streams may not be acquired by prescription or lapse of time.

APPEAL by the plaintiffs, Edward Lumley and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 17th day of January, 1917, dismissing the complaint on the merits upon the decision of the court after a trial at the Erie Special Term.

*Ernest F. Kruse,* for the appellants.

*Willard H. Ticknor* [*Fred J. Blackmon,* attorney], for the respondent.

DE ANGELIS, J.:

The plaintiffs brought this action to enjoin the defendant from polluting water running in a channel through the plaintiffs' farm by the introduction of sewage therein; to enjoin the defendant from collecting from its paved streets through its sewer system water and sewage and causing the same to flow in such channel to the plaintiffs' farm in such quantities as to exceed the capacity of the channel and through such means to cause such water and sewage to overflow the plaintiffs' farm land under cultivation and to destroy their crops, and to recover the damages sustained on account of such acts of the defendant.

The defendant denies that it has a sewer system; claims that it only turns surface storm water into such channel and that it has a right so to do; denies that it has introduced sewage into such channel or polluted the water therein; alleges that the owners of property in said village have a prescriptive right to discharge water by drains into such channel; alleges that some of its streets are State highways over which the defendant has no control; and alleges that there is a misjoinder of parties defendant in that the county of Erie is not made a party defendant.

The trial court decided that the defendant had not polluted the waters of the channel in question; that the defendant had not created a nuisance, and that water did not overflow the banks of the channel and did not damage the plaintiffs' crops.

We think these findings are against the weight of the evidence.

The plaintiffs own about twenty-four acres of land adapted to and used for gardening and farm purposes, situated in the town of Hamburg, Erie county, west of the village of Hamburg.

There is a tract of low land extending from the Amsdale road, called on the defendant's map (Exhibit A) the Foit road, easterly through the northerly part of the village of Hamburg to a point easterly thereof. This tract was wet and

swampy. For more than forty years before the trial of this action there had existed in this tract of land what is described as an open ditch extending from the Amsdale road easterly in a practically straight line for the distance of about a mile. We shall call this the main ditch. The water runs westerly therein in greater or less quantities, depending upon the season of the year and weather conditions. This ditch crosses the Amsdale road and the water running therein goes thence in a watercourse southwesterly about a mile to the Eighteen Mile creek, a tributary to Lake Erie.

At the easterly end of the main ditch it is joined by an open ditch known as the Fatty ditch which extends in a straight line northerly about 1,055 feet, and thence mainly southeasterly till it reaches the mouth of one of the village sewers referred to as the Pleasant avenue sewer, a distance of about 2,950 feet. This southeasterly course of the Fatty ditch is southerly and westerly of and not far from a ridge of land on which the Ridge road is located. An open ditch known as the Church or Fronheiser ditch from the northeast enters this part of the Fatty ditch about 1,400 feet from the mouth of the Pleasant avenue sewer.

Another open ditch known as the Foit ditch enters the Fatty ditch from the east, near the easterly end of the main ditch, and extends southeasterly to a point at the Erie railroad where it receives the drainage of one of the defendant's sewers.

The Fatty ditch and the Foit ditch are in the tract of low, wet, swampy land above referred to and the water running in them goes into the main ditch. Formerly the Fatty ditch extended northeasterly in such tract of land from the point of entrance of the Pleasant avenue sewer through the northerly part of the present site of the village to a point outside of the village limits but this part of the tract within the village limits has been drained and built upon. The Fatty ditch in its present state, the Foit ditch and the Church or Fronheiser ditch have existed for more than forty years as open ditches. They and the main ditch appear to have been artificial ditches in their origin. Experts were sworn on the trial to show that fact. They were doubtless dug to drain this low, wet, swampy tract of land. The tradition is

that they were dug as neighborhood drains by those who owned the land which they traversed.

By reason of the lapse of time and the manner of their use these ditches have become watercourses as fully as though they were not artificial in their origin. This proposition seems not to require authority to support it, but such authority may be found in *Freeman* v. *Weeks* (45 Mich. 335), a case in which Judge COOLEY wrote the opinion.

As these ditches are watercourses, the owners of the land through which they run are entitled to the same benefits and are subject to the same burdens as attach to riparian owners on ordinary watercourses.

It is well settled that such riparian owners are obligated to keep free and unobstructed the watercourses through their lands.

It is also well settled that surface water may be collected and discharged in such a watercourse, but the right so to discharge such surface water has the limitation that the same may not be discharged in such quantities as to overflow the banks of the watercourse.

It has become the settled law of this State that fresh water streams may not be polluted and that the right to pollute the same may not be acquired by prescription or any lapse of time.

The main ditch above described runs through the plaintiffs' land for the distance of 491 feet.

The defendant, the village of Hamburg, was incorporated in the year 1874, is a growing village, and at the time of the trial contained a population of about 2,800 people.

Within the last few years the village has caused many of its streets to be paved, from twenty-eight to thirty feet in width, with brick. Each of its paved streets is fitted with gutters, curbstones and manholes. The village has constructed vitrified pipe sewers in these paved streets into which the water accumulating upon the streets is conducted through the manholes. From a large number of these streets such water is conducted into what is known as the Pleasant avenue sewer which runs under the Erie railroad and into the Fatty ditch at the point above described. The water from others of these streets is conducted into other sewers,

some of which is discharged into the Foit ditch and some into the Church or Fronheiser ditch. While it is true that some of the water from some of the paved streets which would naturally have gone into these open ditches before these streets were paved and the sewers constructed is conducted in another direction, yet it seems certain that by reason of the capacity of the pavements to hold water, the rapidity with which water runs over them and the facility with which such water can reach the level of these ditches, the water that finds its way from the pavements into these open ditches must from time to time overtax their capacity. We think that the evidence establishes that in the fall of 1914 and in the fall of 1915 the main ditch was caused to overflow its banks and injure the plaintiffs' crops owing to the fact that the defendant, through its sewer system, overtaxed the capacity of the main ditch, notwithstanding the finding of the trial court to the contrary.

We think that the evidence establishes the fact that the defendant, the village, permits or suffers discharges from cesspools and water closets to enter its sewers and that such discharges pollute the waters of the main ditch passing through the plaintiffs' land. The extent of such pollution is not great at the present time but such pollution should not be permitted to continue.

We might make findings upon the evidence and direct the judgment that should be entered thereon, but in view of the importance of the litigation and because of the indefiniteness of the evidence in some important respects, we think a new trial should be had.

It follows that the judgment must be reversed and a new trial granted, with costs to the appellants to abide the event.

All concurred, KRUSE, P. J., not sitting.

Judgment reversed and a new trial granted, upon questions of law and fact, with costs to appellants to abide event, and findings disapproved in accordance with opinion.