# CHARLESTON.

GEORGE NESTOR LINGER *v.* J. ROY WATSON, *Trading, etc.*

(No. 6452)

Submitted November 5, 1929.  Decided November 12, 1929.

*Herbert M. Blair,* for appellant.
*Walter R. Simmons* and *Edward A. Brannon,* for appellee.

Woods, President:

This suit was instituted in the circuit court of Lewis county for the purpose of enjoining J. Roy Watson, trading and doing business as Lewis County Telephone, from further use of that portion of the telephone line erected upon and passing across the plaintiff's land, and his agents and employees from entering upon said lands for the purpose of maintaining, replacing, operating or using such portion of the telephone line; and requiring said J. Roy Watson, trading, etc., to remove and take away all his telephone poles, brackets, insulators and telephone wires now located and existing upon said land. Plaintiff proceeded, as shown by his bill and amended and supplemental bill, on the theory that the Peoples United Telephone System, as well as its present successor, the defendant herein, occupied the two tracts of land in question under mere verbal licenses, subject to revocation, at the pleasure of owners thereof. The trial court, after hearing the arguments of counsel and considering the pleadings and the depositions filed, directed the entry of an order awarding the relief prayed for. It is from this order that the defendant appeals.

Prior to April, 1908, plaintiff was the owner of the 33 acre tract, and Philip Emery Linger, of the 29 acre tract, mentioned in the pleadings. The title to the latter tract remained in Philip Emery Linger until his death (1912), and after several transfers came into the plaintiff's possession in 1916. In April, 1908, and sometime prior to the construction of the line from Vandalia to Seymour, via Stalnaker, the Peoples United Telephone System, the predecessor to the defendant, caused a paper, designated "Article of Agreement", to be circulated among the prospective patrons along the proposed route. This paper recited, among other things, that the signers each agreed to build and maintain at his own costs and expense one-half mile of telephone line, upon conditions set out in the by-laws of the company, and to grant a right-of-way for the line, in consideration of $50.00 stock in the company, and the rights incident thereto. A number of signatures to the paper were secured, the notation "pole stock"

or "wire stock" being inserted after each. The plaintiff's name appears in the list, but is practically obliterated by longitudinal pen scratches through the same. After his name appears ditto marks, indicating "pole stock". Philip Emery Linger's name does not appear on the paper.

Plaintiff testified that F. L. Taylor, at that time manager for the district, circulated said "Article of Agreement" and that he secured his (plaintiff's) signature thereto; that shortly thereafter, and before any action was taken thereunder, Taylor, who was still out securing signatures, informed plaintiff that he would have to take a wire section of a mile in the proposed line, instead of a pole and wire section as noted on the paper after his name, for the reason that sufficient subscribers had already been secured for the pole and wire section to construct the proposed line; that plaintiff at that time objected and asked that his name be stricken from said list of tentative subscribers for stock in the company; and that Taylor at that time removed the paper from his pocket and struck out plaintiff's name. Other evidence introduced on plaintiff's behalf is that the line was permitted to be built and remain on his property at will. Also that Philip Emery Linger, who then owned the 29-acre tract now held by plaintiff, did not grant a right-of-way over his property; that while Philip Emery Linger was not in favor of the line, he agreed to allow it to be constructed and remain on his premises providing the parties placing it thereon would remove it whenever requested so to do. It is an admitted fact that no stock was ever issued to either the plaintiff or to Philip Emery Linger, or any other concessions made to them for the use of their respective properties. There is evidence in the record to the effect that Ira Linger and G. W. Summers secured the license to cross the lands and that the understanding was that the line would be removed whenever the plaintiff and Philip Emery Linger, so desired. Taylor, who testified on behalf of defendant, admits making the several pen scratches through the name of plaintiff, but states that the signature was so mutilated for the sole purpose of indicating that stock was not to be issued to the plaintiff. The principal defense so far as the 33-acre tract is concerned seems to be

based primarily upon the right-of-way clause contained in said "Article of Agreement", and a subsequent user of the property for telephone purposes. No attempt is made to show that the plaintiff ever received anything in the way of consideration for the use of his property. In fact, the company admits that he stood on no higher plain than the ordinary subscriber for telephone service.

As we read the record, so far as the purported written agreement is concerned, the chancellor was warranted in finding that the plaintiff's name had been stricken therefrom prior to any action thereon by the officers of the company. Findings of fact of the trial chancellor will not be disturbed on appeal unless at variance with undisputed evidence or contrary to the plain preponderance of the whole evidence. *Davis* v. *Davis Trust Co.,* 107 W. Va. 141; 147 S. E. 490; *Kincaid* v. *Evans,* 107 W. Va. 605, 146 S. E. 620; *McBee* v. *Deusenberry,* 99 W. Va. 176, 128 S. E. 378. The plaintiff not being a party to said agreement, the company cannot rely on any authority thereunder for entering and constructing its line upon the 33-acre tract.

Having disposed of the purported written agreement, we are now met with the question of whether or not an easement was established by prescription. "To establish an easement by prescription there must be: First, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; and third, a claim of right adverse to the owner of the soil, known to and acquiesced in by him. The accepted rule is that the user must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous, and as of right. * * * If the circumstances shown are such as negativate the presumption of a grant by the title holder, the presumption cannot, of course, apply, and no prescriptive rights will arise." 9 R. C. L. 772. If the use is by the owner's permission, or if he opposes and denies the right, title to the easement does not come by such use. *Crosier* v. *Brown,* 66 W. Va. 273, 66 S. E. 326.

The plaintiff in the present case insists, and he introduces evidence to the effect, that the understanding was that the line was to remain on the premises just so long as the property

owners consented thereto, and no longer. The defendant contends that no objection was ever made to the occupancy. On this question of fact, the trial court has likewise found for the plaintiff, and we believe that his finding is supported by the evidence.

Perceiving no error in the finding of the trial court, we affirm the decree.

*Affirmed.*