66 S.E.2d 280 (1951)
TOWN OF PADEN CITY
v.
FELTON.
No. CC767.
Supreme Court of Appeals of West Virginia.
Submitted April 10, 1951.
Decided June 22, 1951.
Dissenting Opinion August 3, 1951.
*282 James W. Pyles, Paden City, for plaintiff.
I. M. Underwood, Middlebourne, for defendant.
*281 HAYMOND, Judge.
This suit in equity was instituted in the Circuit Court of Wetzel County by the plaintiff, Town of Paden City, a municipal corporation, to enjoin the defendant, Iva May Felton, from interfering with the flow of water in a drainage ditch which extends through an unimproved lot of land owned by her designated as Lot No. 3 fronting on Boston Street which adjoins Lot No. 4, also owned and occupied by her as her residence, in the Town of Paden City, and to abate an alleged nuisance which has resulted from her acts in obstructing the ditch. The circuit court sustained the demurrer of the defendant and, on joint motion of the parties, certified its ruling to this Court.
The grounds of demurrer embodied in the certificate of the circuit court are:
(1) Though the plaintiff claims the right of drainage through the lot of the defendant, the bill of complaint contains no allegation that there is any deed or other written instrument which creates the easement which the plaintiff claims to own.
(2) The right of drainage, claimed by the plaintiff, is within the Statute of Frauds and the bill of complaint does not allege that such right is based upon any memorandum in writing signed by the party sought to be charged, or his agent, which confers upon the plaintiff the right which it claims.
(3) The bill of complaint contains no allegations of fact which establish any right or easement by prescription to drain water on or through the land of the defendant.
(4) The bill of complaint fails to allege any acts of the defendant which constitute a nuisance.
The bill of complaint alleges the following material facts which upon demurrer are taken as true.
Prior to and during the year 1903 Paden Valley Company, a corporation, was the owner of a large tract of land, within which is now located the central portion of the Town of Paden City. In 1903, it laid out and subdivided its land, or a considerable portion of it, into lots, avenues, streets and alleys which were indicated on a map or plan which was recorded in the office of the Clerk of the County Court of Wetzel County on September 22, 1903. A copy of this map is filed as an exhibit with the bill *283 of complaint. After the map was placed of record the Paden Valley Company proceeded from time to time to sell lots and parcels of land owned by it to various purchasers and such sales were made with reference to the recorded map. About the year 1917 the Paden City Land Company, from which the defendant obtained title to Lot No. 3, now owned by her, succeeded to the ownership of the land originally owned by Paden Valley Company except the portions which it had previously sold and conveyed to different purchasers; and apparently the Paden City Land Company, at the time of the institution of this suit in 1949, continued to own a portion of the land originally owned and subdivided by its predecessor in title, Paden Valley Company.
In January, 1917, the Town of Paden City was incorporated as a municipal corporation under the general law of this State and in February, 1929, a special charter was granted to it by an Act of the Legislature of that year. Acts of the Legislature, 1929, Regular Session, Municipal Charters, Chapter 5. The land as originally owned and subdivided by Paden Valley Company and the territory which now comprises the Town of Paden City, are generally located between the Ohio River on the west and an elevation known as Ohio River Hill on the east. The northerly portion of the town is located in Wetzel County and the southerly portion extends into Tyler County, in this State. According to the map of the subdivision, the avenues, of which there are eight, and are practically parallel with each other, run generally northeast and southwest and the streets, a number of which intersect the various avenues at right angles, run generally northwest and southeast. Main Street, sixty feet in width, is located near the center of the town and extends generally in a northwesterly direction from Seventh Avenue to the Ohio River. Boston Street, forty feet in width, on the northeasterly side of which the lot of the defendant abuts, is located approximately 800 feet northeast of and parallel to Main Street, and extends northwest from Seventh Avenue to Fourth Avenue.
The surface of the section between Fourth Avenue on the northwest, Boston Street on the northeast, Seventh Avenue or the southeast and Main Street on the southwest, through which area Fifth Avenue passes from Main Street to Boston Street, is lower in elevation than the surface of the territory north and east of Boston Street and north and east of Seventh Avenue. When the subdivision was opened in 1903, the natural course of the drainage of the surface, in the area north and east of Boston Street and Sixth Avenue, was such that the water from seasonal rains and melting snows ran or flowed generally into the level space between Fourth Avenue and Fifth Avenue and at times accumulated and remained in a lower portion of that area near the intersection of Fifth Avenue and Main Street and created a marsh at that point. In order to drain the surface water and to change the direction of its natural flow in that section, Paden Valley Company, the owner of the subdivision, constructed a drainage ditch which began at or near the southeastern corner of Fifth Avenue and Main Street and extended in a northeasterly direction to a natural watercourse in a ravine known as Van Camp Hollow, a distance of approximately 1,700 feet northeast of the beginning point of the ditch. The ditch as so constructed extends in an almost direct line along the southeasterly side of Fifth Avenue, across Boston Street, through Lot No. 3, now owned by the defendant, across Maple Alley, through Lot No. 44 or Lot No. 45, abutting on Wetzel Street, across Wetzel Street, through Lot No. 2 or Lot No. 3, abutting on Beach Alley, across Beach Alley, through Lot No. 44 or Lot No. 45, abutting on Work Street, across Work Street, through Lot No. 2 or Lot No. 3 to Walnut Alley, across Walnut Alley and along an unnamed alley at right angles to Walnut Alley to Miller Street, across Miller Street and through a block of eleven lots north of Miller Street to Van Camp Hollow where it connects with a natural watercourse which runs northwest and empties into the Ohio River. Wetzel Street, Work Street and Miller Street, which the ditch crosses, are parallel with and are located northeast of Boston Street in the order just stated. The slope of the ditch is described as "slight" and its depth is not more than an inch or *284 two inches where it begins at Main Street and Fifth Avenue, but it descends, apparently on a gradual incline, until it is from two feet to four feet in depth as it passes through Lot No. 3 of the defendant. The width of the ditch is also described as "slight" at the beginning point but it increases until it reaches from four feet to six feet as it extends through the same lot. The map, a copy of which is exhibited with the bill of complaint, was made and recorded before the ditch was constructed, and does not, of course, show or indicate in any way the existence of the ditch or its location at any point; and the deed from the Paden City Land Company, to the defendant for Lot No. 3, made in 1946, long after the ditch was constructed, contains no reference to it. The deed, however, expressly excepts and reserves the right to the grantor, its successors or assigns, to construct, maintain, and operate water pipes, gas pipes, and telephone, telegraph or electric light poles upon all the streets and alleys in the plan as laid out by the Paden Valley Company.
For more than ten years before 1946 the defendant has lived in a house located on Lot No. 4 on Boston Street which was conveyed to her by the Paden City Land Company, by deed dated July 18, 1935, which is duly recorded in the office of the Clerk of the County Court of Wetzel County. During the time she has resided on Lot No. 4 the ditch across Boston Street and through Lot No. 3 was continuously and uninterruptedly open and was used to drain surface water from Fifth Avenue and other properties in the town and, as so located and used, it is within twenty five feet of the dwelling house of the defendant which was erected on Lot No. 4 prior to 1917. Some time after 1942 the defendant entered into a contract with the Paden City Land Company to purchase Lot No. 3, and, at that time, and for more than ten years previously, the defendant knew of the existence of the ditch on that lot. After the defendant obtained a deed for Lot No. 3 in 1946 she resisted efforts of employees of the plaintiff to clean the ditch on her lot and threatened to cause their arrest. Since she became the owner of the lot she has obstructed the ditch on Lot No. 3 and on Boston Street by placing debris and other substances in the ditch and has refused to permit their removal by employees of the plaintiff.
As a result of her acts in obstructing the ditch, both on her lot and on Boston Street, the water does not properly flow through but accumulates and remains in the ditch, becomes stagnant, "evil-smelling", unsanitary and unhealthful, and, in times of hard rains or showers, overflows upon Fifth Avenue and the unpaved sidewalk on one side of that street, renders the sidewalk impassable for residents on Fifth Avenue, and injures its surface. The obstructions also cause the water to run into certain sewers in the town and produce a condition which will result in the overflow of such sewers into the homes of various residents of the town. These acts of the defendant are alleged to constitute the nuisance for the abatement of which the plaintiff prays, and have caused certain damages which it also seeks to recover in this suit.
As to the use which has been made of the ditch by the plaintiff since its incorporation as a municipal corporation, the pertinent allegations of the bill of complaint are that the Paden Valley Company, after it constructed the ditch maintained it through its plan and upon its various lots and streets shown on the plan, including Lot No. 3 on Boston Street, and drained surface water from its various lots, streets, avenues and alleys shown on the plan until the incorporation of the town; that, after its incorporation, the town has maintained the ditch, by cleaning it from time to time, and by draining surface water collecting upon various lots, streets, avenues and alleys, and especially upon Fifth Avenue, into the ditch; that the ditch has for many years, and until the present time, served as the southeasterly gutter on Fifth Avenue which is still an unimproved street, although its northeasterly end has been "cindered" by the town; that for many years after its incorporation the town provided "a covering" over the ditch where it crossed Boston Street before improvements were made to that street; that some time before 1940 Boston Street was "hard surfaced" from Fourth Avenue to Sixth Avenue by the *285 town and that at that time it "installed" a tile drain under Boston Street from Fifth Avenue to Lot No. 3 and placed the ditch under Boston Street at that point; that at all times from 1908, when the ditch was constructed and opened, until some time in 1946, the ditch remained "open continuously and uninterruptedly" and existed as a public drainage ditch; that it has been continuously and uninterruptedly maintained as such by the Paden Valley Company, the town, and its inhabitants under claim of right so to maintain it and without any obstruction, interference, or objection from any person during that period of time; that the Paden City Land Company is the sole real estate development corporation in the town and succeeded to the title of Paden Valley Company to Lot No. 3 about 1917; that before its sale of Lot No. 3 the Paden City Land Company did not question the right of the town to drain surface water from Fifth Avenue across Boston Street through Lot No. 3; that during the time it has been in existence the ditch has been necessary to carry surface water from Fifth Avenue as a part of the general system for draining such water from the lots on the Paden Valley Plan of the town; that the ditch was originally created by the Paden Valley Company for the benefit of Fifth Avenue, a public street, and for the various other lots owned by the company in the Paden Valley Plan; and that it has at all times been so used before 1946.
It is clear that plaintiff bases its claim to the relief which it seeks on the theory of an implied dedication of the ditch to public use by the Paden Valley Company in constructing it and that by its use of the ditch since the incorporation of the plaintiff as a municipal corporation it has acquired by prescription an easement for the ditch through the land of the defendant on which it is located.
In opposing the claim of the plaintiff of an easement for the ditch over her land the defendant contends, in substance, (1) that an easement of the character claimed by the plaintiff can be created only by written grant or contract; (2) that the facts alleged in the bill of complaint are not sufficient to show that the plaintiff has acquired an easement by prescription; (3) that, as no such easement exists, the defendant, as owner of a lot or parcel of land in a city, as distinguished from agricultural land in outlying territory, is entitled to divert the drainage of surface water from her land to lands of other owners; and (4) that the ditch is an artificial and not a natural water course.
Before dealing with the other questions raised by the demurrer, it is proper to consider the contention of the defendant that the drainage right or easement claimed by the plaintiff can be created only by express grant or contract in writing. In support of that position the defendant cites and relies upon the decision of this Court in Pifer v. Brown, 43 W.Va. 412, 27 S.E. 399, 49 L.R.A. 497. In that case the plaintiff obtained verbal permission from the defendant to lay and construct an underground tile sewer from the land of the plaintiff in the Town of Buckhannon, in Upshur County, through nearby land of the defendant with the understanding that the defendant should have the right to connect with the sewer to be constructed by the plaintiff. Pursuant to that arrangement, the plaintiff dug a ditch through the land of the defendant, and at his expense laid, constructed and buried in it for a distance of about fifty feet a tile sewer which the plaintiff charged was necessary to enable him to drain the sewage from his property. A few months after the sewer was completed the defendant opened the ditch, removed some of the tile, destroyed the connection, and obstructed and rendered the sewer useless for the purpose for which it was constructed by the plaintiff. The plaintiff sought and obtained a perpetual injunction which restrained the defendant from further obstructing the sewer and required the defendant to repair and restore it. In reversing the decree of the circuit court and dissolving the injunction, this Court regarded the arrangement between the parties as a parol license and held in point 1 of the syllabus that "a parol license from one lot owner in a town to another to pass a tile drain under the former's lot for the purpose of draining the lot of the latter is revocable at the pleasure of such *286 licensor.", and in point 3 of the syllabus that "The right of drainage through the lands of another is an easement requiring for its enjoyment an interest in such lands which cannot be conferred except by deed or conveyance in writing." That case simply dealt with the character of the privilege and declared and designated the manner in which an easement for an underground drain could be created or acquired. In that case no question concerning a right of drainage or easement in an open ditch or passageway in favor of one person through the land of another person was presented, considered or decided. For that reason and the additional reason that the plaintiff does not claim, and alleges no facts in the bill of complaint upon which to base, an easement created by deed or other written instrument, the holding in the Pifer case has no application to the facts in the case at bar. In consequence, the grounds of demurrer that the easement claimed by the plaintiff is within the Statute of Frauds and can be created or acquired only by deed or other written instrument are not well founded and cannot be sustained.
The vital questions for decision are whether, under the material allegations of the bill of complaint, the plaintiff has acquired an easement by prescription for drainage through the open ditch on and over the lot of the defendant, or whether there has been a dedication of the ditch to the plaintiff for public use.
The principles and the requisites of the acquisition of an easement by prescription in a private way apply to drainage rights in an open ditch or passageway. 17 Am.Jur., Easements, Section 85. That a private right of way may be acquired by grant, express or implied, or by prescription is established by many decisions of this Court. See Derifield v. Maynard, 126 W.Va. 750, 30 S.E.2d 10; Post v. Wallace, 119 W.Va. 132, 192 S.E. 112; Walton v. Knight, 62 W.Va. 223, 58 S.E. 1025. An easement in real estate is an interest in land and for every such easement there must be two distinct estates or tenements, the dominant to which the right belongs, and the servient upon which the obligation rests. Cottrell v. Nurnberger, 131 W.Va. 391, 47 S.E.2d 454, 5 A.L.R.2d 1298. It is an incorporeal hereditament and may be created in various ways. The general rule, subject to several exceptions, is that an easement can be created only by grant, express or implied, or by prescription, which presupposes a grant. 27 C.J. 193; 37 C.J.S., Frauds, Statute of, § 71. An easement may, however, be created by agreement or covenant as well as by grant. Post v. Bailey, 110 W.Va. 504, 159 S.E. 524. Many authorities say that, as an exception to the general rule just stated, an easement may sometimes be created by estoppel. 1 Minor on Real Property, Second Edition, Section 104; 17 Am.Jur., Easements, Section 74. One eminent authority states that an easement may be created or acquired by six different methods: express grant, reservation or exception in a deed, implied grant, prescription, a statutory proceeding usually under the power of eminent domain, and estoppel. Tiffany, Real Property, two volumes in one edition, Section 315. See also 1 Minor on Real Property, Second Edition, Section 93; Cottrell v. Nurnberger, 131 W.Va. 391, 47 S.E.2d 454, 5 A.L.R.2d 1298. A municipal corporation may acquire an easement by prescription to the same extent as any other person; but if a municipality claims an easement by prescription it must be established by corporate acts which regulate or exercise control over it. 28 C.J.S., Easements, § 8; Hill v. Lord, 48 Me. 83; Sturges v. City of Meridian, 95 Miss. 35, 48 So. 620; City of Lynchburg v. Chesapeake & Ohio Railway Co., 170 Va. 108, 195 S.E. 510; City of Richmond v. Gallego Mills Co., 102 Va. 165, 45 S.E. 877.
As to an easement by prescription, the requisites for its acquisition are continued and uninterrupted, open and visible, use of a definite right in the land of another which is identical to that claimed as an easement and has a relation to the use of, and a direct and apparent connection with, the dominant tenement under an adverse claim of right, for the prescriptive period of time. The further condition that the user must be exclusive is sometimes added. 17 Am.Jur., Easements, Section 59. "Exclusive use", however, does not mean *287 that no one has used the way except the claimant of the easement; it means that his right to do so does not depend upon a similar right in others. In order to establish an independent prescriptive right, the individual user must perform some act to the knowledge of the servient owner which clearly indicates his individual claim of right. 17 Am.Jur., Easements, Section 64. The rule generally followed is that use of a right of way in common with the public is regarded as negativing a presumption of grant to any individual user. 17 Am.Jur., Easements, Section 64. An easement over land will not arise by prescription simply from permission of the owner of the servient estate, no matter how long the permissive use may continue; and when a use by permission has begun, in the absence of some decisive act by the claimant of the easement, which indicates an adverse and hostile claim, the use will continue to be regarded as permissive, and this is especially so when the use of the land is in common with its use by others. Witt v. Creasey, 117 Va. 872, 86 S.E. 128. In Linger v. Watson, 108 W.Va. 180, 150 S.E. 525, in point 2 of the syllabus, the requisites for the acquisition of an easement by prescription are stated in this language: "To establish an easement by prescription there must be: First, continued and uninterrupted use or enjoyment; second, identity of the thing enjoyed; and, third, a claim of right adverse to the owner of the soil, known to and acquiesced in by him. If the use is by the owner's permission, or if he opposes and denies the right, title to the easement does not come by such use." See also Faulkner v. Thorn, 122 W.Va. 323, 9 S.E.2d 140; Crosier v. Brown, 66 W.Va. 273, 66 S.E. 326, 25 L.R.A., N.S., 174; 28 C.J.S., Easements, § 14. In Hall v. Backus, 92 W.Va. 155, 114 S.E. 449, this Court uses this language in point 3 of the syllabus: "Use of an open way in common with the owner of the land on which it is and the public in general is presumptively permissive, and not exercised under a claim of right, and in the absence of proof of some act on the part of the person so using it, or circumstance under which he used it, showing a claim of exclusive or peculiar right in him distinct from that of the general public."
In MacCorkle v. City of Charleston, 105 W.Va. 395, 142 S.E. 841, 842, 58 A.L.R. 231, which involved the alleged dedication to the city of a private alley established by owners of nearby lands obtained by them in a partition proceeding and which had been used by the public and on which expenditures of money had been made by the city, this Court said: "`Where a way is laid out and used as a private way, the mere fact that the public also makes use of it without objection from the owner will not make it a public way.' Elliott, Roads and Streets (4th Ed.) § 5. See, also, § 29, and, in addition to the many cases cited by this author, see Washburn, Easements and Servitudes, (4th Ed.) p. 213, § 13; 18 C.J., p. 105, § 1201; Brinck v. Collier, 56 Mo. 160; White v. Bradley, 66 Me. 254, 258, 259; City of Chicago v. Borden, 190 Ill. 430, 444, 445, 60 N.E. 915; [Georgia R. &] Banking Co. v. City of Atlanta, 118 Ga. 486, 489, 490, 45 S.E. 256; Parrott v. Stewart, 65 Or. 254, 261, 132 P. 523; Hall v. McLeod, 2 Mete. [98] (59 Ky.) 98, 101, 102; Davis v. Ramsey, 50 N.C. 236, 241; Speir v. Town of New Utrecht, 121 N.Y. 420, 430, 431, 24 N.E. 692; Shellhouse v. State, 110 Ind. 509, 513, 11 N.E. 484; Irwin v. Dixion, 9 How. 10, 32, 33, 13 L.Ed. 25. These cases proceed on the theory that, when a private way is open, it is open either for the convenience, or by the permission of, the owner; that the public, finding the way open, uses it without any claim of right but merely because it is open; that the owner indulges the public's use rather than be captious; that such use is in common with his own; and that he is not to be penalized for accommodating the public. Therefore, they say, the vital elements of abandonment by the owner, and adverse user by the public, respectively, upon which an implied dedication or prescription must rest, are lacking, and `no length of time, during which property is so used, can deprive an owner of his title'. Irwin v. Dixion, supra, p. 33.
"The contention is also made that because the public has had access to the alley and *288 has not been denied the right to use it, and the defendant has made some expenditures on it, the alley has become public by virtue of section 3, c. 43 of the Code. If this contention were sustained, all neighborhood accommodation over private roads would cease; for if it were understood that the passage of neighbors through one's property over a way prepared by one for his own use was likely to result in the way becoming public, a discontinuance of that courtesy would immediately follow. We cannot conceive that the Legislature contemplated such a result and we hold that the section does not apply to a purely private way which is used by the public at the sufferance of the owner. To hold otherwise would violate the constitutional inhibition against taking private property for public use without just compensation to the owner."
This Court has frequently decided that the open, continuous and uninterrupted use of a private way by one landowner over the land of another person for a period of ten years or more, with the knowledge of such other person, is presumptive evidence of the claim of right to an easement and of the adverse character of the use, and that the presumption will be deemed to be conclusive, unless it is shown that the use was permissive or that the owner of the land so used protested and objected to such use. Post v. Wallace, 119 W.Va. 132, 192 S.E. 112; Hall v. Backus, 92 W.Va. 155, 114 S.E. 449; Staggers v. Hines, 87 W.Va. 65, 104 S.E. 768; Hawkins v. Conner, 75 W.Va. 220, 83 S.E. 982; Walton v. Knight, 62. W.Va. 223, 58 S.E. 1025; Boyd v. Woolwine, 40 W.Va. 282, 21 S.E. 1020; Rogerson v. Shepherd, 33 W.Va. 307, 10 S.E. 632. Those cases involved the right of the owner of land, who used a way over the land of another owner, to an easement as a result of open, continuous and uninterrupted use of such way for a period of ten years or longer under a claim of right to such use. The language of those cases clearly implies, however, that the person so using the way and claiming an easement in it asserted an independent and individual right in himself to use the way and that the right to do so did not depend upon a similar right to such use in other persons. That situation does not appear from the bill of complaint in this case, the allegations of which show that the ditch was constructed by the then landowner, Paden Valley Company, for the purpose of draining its own land; that after it sold lots in its subdivision and after the plaintiff was incorporated fourteen years later, the company, its successor in title, the Paden City Land Company, the various lot owners, and the plaintiff used the ditch together and in common for drainage purposes, and have since continued to use it in common; and that such use by the plaintiff was, and has been, permissive and not adverse in character.
There is no allegation in the bill of complaint that the plaintiff, at any time, assumed complete or partial regulation or control of the ditch, kept it in repair, or made any expenditure of public money to equip or improve it. The only allegations which indicate any acts by the plaintiff of that nature are the statements that for many years after its incorporation, without specifying the number, the plaintiff "provided a covering over such ditch where it crossed Boston street"; that "Sometime prior to 1940 Boston street was hard surfaced from Fourth Avenue to Sixth Avenue by the Town and at such time the Town installed a tile drain under Boston street from Fifth Avenue to lot no. 3 on Boston street to carry such ditch under Boston street at that point"; and that the plaintiff after its incorporation maintained "such ditch to the present time, by cleaning it out from time to time and by draining surface waters collecting upon the various lots, streets, avenues and alleys, especially Fifth Avenue of the Town, into the same." These allegations are vague, uncertain and indefinite, relate to isolated, sporadic and equivocal acts, and are not necessarily inconsistent with any purpose other than acceptance of a dedication of the ditch. The nature of the cover provided for the ditch where it crosses Boston Street is not stated or described. The cover could and may have been an overlying plank or walkway. How long such cover existed, whether more or less than ten *289 years, is not stated. When, prior to 1940, the tile was placed in the ditch under Boston Street, and whether such tile had been placed and maintained more or less than ten years before the protests of the defendant after she purchased the lot in 1946, are not indicated or shown. The nature of the acts of the plaintiff in "cleaning out" the ditch, where they were performed, when or how frequently they were done, are likewise not stated or set forth, though the clear inference is that they were performed after the defendant acquired Lot No. 3 and that they evoked her protests. The statement that the plaintiff maintained the ditch "by draining surface waters collecting upon the various lots, streets, avenues and alleys, especially Fifth Avenue of the Town, into the same." merely shows that the plaintiff used the ditch for that purpose in common with the owner of the subdivision or of the unsold lots in it, which was the Paden Valley Company or its successor in title, the Paden City Land Company, and the defendant or her predecessor in title to Lot No. 3 through which lot and other lots owned by either of these companies, or their successors in title, the ditch passes, and indicates clearly that such use of the ditch by the plaintiff was permissive and not adverse to the defendant or her predecessor in title as to her lot or to the owners of the other lots affected. The use of the ditch by the plaintiff, being permissive only, regardless of the duration of the period of its exercise, did not confer upon the plaintiff any right of drainage or easement in the ditch on and over the lot of the defendant. Linger v. Watson, 108 W.Va. 180, 150 S.E. 525; Point 3, Syllabus, Hall v. Backus, 92 W.Va. 155, 114 S.E. 449.
The allegations of the bill of complaint, including those already specifically referred to, fail to establish any dedication, express or implied, of the ditch, as a public drain, by the Paden Valley Company or its successor in title, to the plaintiff. The drain is not shown on any recorded map used by either of the predecessors in title of the defendant, and the deed from Paden City Land Company to her in 1946, containing covenants of general warranty, does not except or reserve or even mention the ditch, although it does expressly except and reserve, and by so doing recognizes, a right of way or easement over the avenues, the streets and the alleys in the subdivision for water pipes, gas pipes, and telephone, telegraph or electric light poles. There is no sufficient allegation of any intention upon the part of the Paden Valley Company, which constructed the ditch approximately nine years before the town was incorporated, to dedicate the ditch, either expressly or impliedly, or of any action, official or otherwise, by the town to indicate that it accepted or intended to accept the ditch as a public drain. The mere permissive use of it by the plaintiff in common with the Paden Valley Company and its successor in title and the purchasers of other lots from either company, including the defendant, and the vague and uncertain acts of the plaintiff in cleaning some part of it at unspecified intervals, without assuming to maintain, regulate, or control it, or to keep it in repair, or to expend public funds for the purpose of equipping or improving it, do not constitute acceptance, express or implied, by the plaintiff of any dedication of the ditch to public use by any of its owners, past or present.
The mere use by the public of a private alley in common with its owners does not show a dedication of the alley to public use or vest any right to it in the public. MacCorkle v. City of Charleston, 105 W. Va. 395, 142 S.E. 841, 842, 58 A.L.R. 231. Though the public used the alley in common with its owners and the city expended money on it, that case holds that there had been no dedication of the private alley to public use. In the opinion this Court said: "In an unbroken line of decisions this court has held that an owner of land may dedicate it to public use by acts and declarations without an express grant. But in such case the conduct relied upon to show the animus dedicandi must be deliberate and unmistakable, active rather than passive, and `the result of attention rather than inattention.' Pierpoint v. Town of Harrisville, 9 W.Va. 215; Miller v. *290 Town of Aracoma, 30 W.Va. 606, 5 S.E. 148; Miller v. City of Bluefield, 87 W.Va. 217, 104 S.E. 547. In fact, the acts relied upon must be inconsistent with any purpose but dedication. Morlang v. City of Parkersburg, 84 W.Va. 509, 100 S.E. 394, 7 A.L.R. 717. As stated in DeGrilleau v. Frawley, 48 La.Ann. 184, 19 So. 151, the proof of dedication should be so clear `as to exclude any other reasonable hypothesis.' The burden of furnishing such proof is on the party who alleges the dedication. Mason City [Salt & Mining] Co. v. Town of Mason, 23 W.Va. 211; 18 C.J., p. 93, § 101."
In Miller v. City of Bluefield, 87 W.Va. 217, 104 S.E. 547, this Court held in point 1 of the syllabus: "An owner of private property is not deemed in law to have dedicated it to public use, either by deed or by conduct, unless his intention so to do is deliberately, unequivocally, and decisively manifested by his deed or his conduct."; and in the opinion said: "Intention to dedicate being the vital principle of a dedication of property to public use, the declaration of such intention, whether by deed or by conduct, must be deliberate, unequivocal, and decided, manifesting a positive and unmistakable intention permanently to abandon the property to public use. Pierpoint v. [Town of] Harrisville, 9 W.Va. 215; Walker v. Summers, 9 W.Va. 533; Boughner v. [Town of] Clarksburg, 15 W.Va. 394; Miller v. Town of Aracoma, 30 W.Va. 606, 5 S.E. 148; Morlang v. City of Parkersburg [84 W.Va. 509], 100 S.E. 394 [7 A.L.R. 717]; Hicks v. City of Bluefield [86 W.Va. 367], 103 S.E. 323." In the Miller case, in point 4 of the syllabus, this Court also declared that acquiescence by the owner of land in its use and control by a public authority, manifested merely by his silence, is negatived or terminated by his conveyance of the property to another person within the statutory period of limitations. Under the allegations of the bill of complaint, as already pointed out, the only significant conduct of the plaintiff indicative of its use or control of the ditch was its action, "Sometime prior to 1940" when "Boston street was hard surfaced from Fourth Avenue to Sixth Avenue", in placing a tile drain in the ditch under Boston Street from Fifth Avenue to Lot No. 3. It is reasonably clear that this action of the plaintiff occurred less than ten years, the statutory period of limitations with respect to adverse possession of land, before the then owner of Lot No. 3, Paden City Land Company, conveyed it to the defendant by deed containing covenants of general warranty which neither excepted nor reserved the ditch nor contained any reference whatsoever to it. By such conveyance Paden City Land Company negatived or terminated its acquiescence, whatever it may have been, to any use or control of the ditch by the plaintiff; and after the deed was made to the defendant she has persistently and unmistakably protested and objected to any use of the ditch by it.
In Boyd v. Woolwine, 40 W.Va. 282, 21 S.E. 1020, this Court held in point 4 of the syllabus that "The continuous and uninterrupted use of a passway for 20 years or more by the people generally, though with the knowledge and consent of the owner of the land, will not constitute it a county highway; it must be accepted or in some way recognized as such by the county court." The case of City of Point Pleasant v. Caldwell, 87 W.Va. 277, 104 S.E. 610, involving the question of the acceptance by a public authority of an offer of public dedication of a street, holds that in order to acquire title to streets and alleys shown upon a plat by which it is proposed to dedicate them to the public a municipality or other public authority must accept them, and that when the owner of a tract of land lays it into lots, streets and alleys, makes a plat of the land and offers to dedicate to the public the streets and the alleys shown on the plat, the public authorities may accept the dedication in whole or in part, but that if an acceptance by implication is relied upon, the acts which effectuate such implied acceptance must show a clear intent to treat and consider the streets and the alleys so offered as public streets and alleys. In the latest decision of this Court dealing with the dedication *291 of land to public use, point 1 of the syllabus contains this language: "No dedication to public use arises upon the subdividing of land into lots, streets and alleys as shown upon a recorded plat, until and unless the proper public authority either expressly or by clear implication accepts the dedication so tendered." Rose v. Fisher, 130 W.Va. 53, 42 S.E.2d 249, 172 A.L.R. 160.
As the plaintiff has acquired no right of drainage in the ditch over and through the lot of the defendant, either by prescription or by dedication, and as the acts of the defendant in obstructing the ditch of which the plaintiff complains and which it alleges create a nuisance, invade no existing right of the plaintiff, they do not constitute a nuisance and may not be enjoined or abated as such in this suit.
In view of the conclusion reached upon the decisive questions in this case, the contentions of the defendant that she has the right to divert surface water from her lot within the town, as distinguished from agricultural land in an outlying section, to lands owned by other persons, and that the ditch is an artificial, and not a natural, watercourse, need not be considered or discussed further than to state that the ditch is obviously a man made, artificial watercourse, and that a natural watercourse, unlike the present ditch, is a watercourse which consists of bed, bank, and water, and in which the water usually flows in a certain direction and by a regular channel with banks or sides. See Neal v. Ohio River Railroad Co., 47 W.Va. 316, 34 S.E. 914.
The ruling of the circuit court in sustaining the demurrer of the defendant to the bill of complaint is affirmed.
Ruling affirmed.
GIVEN, Judge (dissenting).
I am of the view that the town has a perpetual right to the use of the ditch, either by prescription, implied dedication and acceptance, or because the purpose and manner of the construction and the long use thereof have constituted the same a natural water course, within the legal meaning of that term. In an attempt to demonstrate that this view is not fanciful, pertinent provisions of the bill will be quoted at length.
There is no question that the ditch was constructed in 1908 by the land company for the very purpose for which it has since been used and maintained, namely, to protect the streets, alleys and properties along the same from damage by waters. Neither is there any question that the ditch was maintained for that purpose by the land company from the time of its construction until the incorporation of the town in 1917, or by the town from the time of its incorporation until the obstruction of the ditch by the owner of Lot No. 3, a period of more than thirty years. I assume that no one will deny that it was the duty of the town to protect its streets and alleys from such damage and to prevent them from being "rendered impassable and reduced from hard packed streets and sidewalks to a morass"; to prevent such waters from damaging properties of "residents of the town"; and from creating "an unsanitary condition * * *." The bill alleges that:
"After opening such drainage ditch, the Paden Valley Company thereafter maintained the same through its plan and upon its various lots and streets shown thereon, including lot no. 3 on Boston street, and drained surface waters from its various lots, streets, avenues and alleys shown on such plan until the original incorporation of the Town. Subsequent to its incorporation, the Town thereafter maintained such ditch to the present time, by cleaning it out from time to time and by draining surface waters collecting upon the various lots, streets, avenues and alleys, especially Fifth Avenue of the Town, into the same. Such ditch has for many years to the present time served as the southeasterly gutter of said Fifth Avenue which is as yet an unpaved street although the northeasterly end thereof has been cindered by the Town. For many years after its incorporation the Town provided a covering over such ditch where it crossed Boston street prior to the improvement of said Boston street. Sometime prior to 1940 *292 Boston street was hard surfaced from Fourth Avenue to Sixth Avenue by the Town and at such time the Town installed a tile drain under Boston street from Fifth Avenue to lot no. 3 on Boston street to carry such ditch under Boston street at that point.
"At all times from 1908 when such ditch was created and opened until sometime in 1946, such ditch has remained open continuously and uninterruptedly and existed as a public drainage ditch, and has been continuously and uninterruptedly maintained as such by the Paden Valley Company, the Town and the inhabitants thereof under claim of right to so maintain the same and without any obstruction, interference or objection from any person during all such time. During all such period of time such ditch has continuously and uninterruptedly existed, plainly, and notoriously apparent, open upon the various lands through which it has passed."
Another allegation contained in the bill is: "* * * The aforementioned drainage ditch across Boston street and through lot No. 3 on Boston street, during all that period of time, was continuously and uninterruptedly open, was worked and cleaned at various times during such period by the Town to the defendant's knowledge, was continuously used to drain surface water, as hereinbefore mentioned, from Fifth Avenue and other properties in the Town, and was patently and apparently necessary for such purpose. Such ditch where it passed through lot no. 3 on Boston street is, and has been during all that period, within twenty-five (25) feet of the defendant's said dwelling house. The said dwelling house of the defendant was built prior to 1917 and has from that time to the present set in such proximity to said drainage ditch." Still another allegation is: "* * * At all times prior to 1946 such ditch has been continuously and uninterruptedly used, and has openly and apparently been maintained, as a part of the general system for the drainage of the majority of such lots and of said Fifth Avenue, dedicated upon such plan as a public street and accepted and used as such by the Town. Such ditch, during all that period of time, has been necessary for the carrying of surface water from said Fifth Avenue and as a part of the general system for draining the surface water from the lots on the Paden Valley Plan of the Town. Such ditch was originally created by the Paden Valley Company for the benefit of the public street of Fifth Avenue and for its various other lots in the said Paden Valley Plan, and has at all times prior to 1946 been so used. Each of said Boston street and Fifth Avenue has been a public street of the Town since 1917."
Other allegations are to the effect that the ditch, though small at its beginning, increased in size until at Lot 3 it is from two to four feet in depth and from four to six feet in width; that the owner and former owner of Lot 3 had full notice of the existence and use of the ditch by the town for more than ten years prior to the purchase of Lot 3 by defendant; and that defendant purchased the lot knowing that it was being sold to her at a reduced price because of the existence of the ditch. It may be noted that the land company does not question the right of the town to the continued use of the ditch.
Allegations of the pleading demurred to are, of course, taken as true. Also, every reasonable inference arising from such allegations supporting the pleading must be considered as if properly pleaded. According to the holding of the majority, necessary requisites for acquiring an easement by prescription are: (1) Continuous and uninterrupted use and enjoyment thereof for the prescriptive period; (2) identity of the thing or right enjoyed; (3) claim of right adverse to the owner of the land; (4) acquiescence in the use by the owner; and (5) such use must not have been permissive.
I do not understand that the majority contends the allegations of the bill are insufficient as to the use of the ditch by the town being continuous and uninterrupted for the prescriptive period. I think there is no basis for any such contention, in the face of the clear and unequivocal allegations that such use was "continuously and uninterruptedly * * *"; that *293 the town from the time of its incorporation in 1917 "maintained such ditch to the present time, by cleaning it out from time to time by draining surface waters" from various lots, streets, avenues and alleys "through the same"; that the town maintained the ditch for a period of more than thirty years as "a public drainage ditch"; that for over thirty years the ditch "has been continuously and uninterruptedly used, and has openly and apparently been maintained, as a part of the general system for the drainage of the majority of such lots and said Fifth Avenue * * *."
Neither is there any question as to the identity of the easement or right claimed or enjoyed by the town, namely, the right to protect and preserve its streets and alleys from damage by drainage through the ditch, as it has done for more than thirty years. It should not be overlooked that the ditch was not constructed by the land company for its own use, but "for the benefit of the public * * *." True, the land company may have derived benefits from the ditch through drainage of its own lots. Such benefits, however, do not destroy the identity of the right claimed and used adversely by the town to drain its own streets through the ditch.
I find no basis for questioning the sufficiency of the allegations as to the claim of the town being adverse under a claim of right, or that the landowner did not acquiesce in the use under that claim for the full prescriptive period. The bill would, however, be sufficient without any such allegations, since the admitted use by the town, for over ten years, openly, unobjected to and unprotested, creates a presumption that such use was adverse and acquiesced in by the land company. The majority opinion recognizes this principle in these words: "This Court has frequently decided that the open, continuous and uninterrupted use of a private way by one landowner over the land of another person for a period of ten years or more, with the knowledge of such other person, is presumptive evidence of the claim of right to an easement and of the adverse character of the use, and that the presumption will be deemed to be conclusive, unless it is shown that the use was permissive or that the owner of the land so used protested and objected to such use." "Open, continuous, and notorious, use by an owner of land, of a private way over an adjoining tract, owned by another person, known, acquiesced in, unobjected to, and unprotested by the latter, is presumptively adverse to him and enjoyed under a bona fide claim of right." Hall v. Backus, 92 W.Va. 155, 114 S.E. 449. To the same effect are Staggers v. Hines, 87 W.Va. 65, 104 S.E. 768; Hawkins v. Conner, 75 W.Va. 220, 83 S.E. 982. In Walton v. Knight, 62 W.Va. 223, 58 S.E.2d 1025, Points 2 and 3 of the syllabus, the Court held: "Such use is presumed to be with the knowledge and acquiescence of the owner and to prima facie give the right, which presumption will be conclusive, unless accompanied by the protest and objection of the owner under such circumstances as to repel it." "When there has been such use of another's land for the period requisite to create an easement by prescription, the bona fides of the claim of right is established." We do not have to rely upon any presumption or inference, however, for the bill clearly alleges that the use was "under claim of right to so maintain it without any restriction, interference or objection from any person during all of said time"; that the town used and maintained the ditch for more than thirty years "as a public drainage ditch"; and that the ditch was, during the prescriptive period, "maintained as a part of the general system for the draining" of the lots and streets.
I cannot agree with the statement of the majority that the bill contains no allegation to the effect that the "plaintiff, at any time, assumed complete or partial regulation or control of the ditch, kept it in repair, or made any expenditure of public money to equip or improve it." I think the following allegations completely refute that position. "Subsequent to its incorporation, the Town thereafter maintained such ditch to the present time, by cleaning it out from time to time * * *"; that for more than ten years *294 it "was continuously, uninterruptedly open, was worked and cleaned at various times during such period by the Town to the defendant's knowledge, was continuously used to drain surface water, as hereinbefore mentioned, from Fifth Avenue and other properties in the Town, and was patently and apparently necessary for such purpose"; and that the ditch "At all times prior to 1946, * * * has openly and apparently been maintained, as a part of the general system for the drainage for the majority of such lots and of said Fifth Avenue * * *." While I do not find any allegation in the bill to the effect that other persons used the ditch for drainage purposes, I think that immaterial. What the town did, and what it now claims the right to do, was to use the ditch to drain its own streets and alleys. The use by any other person for some other purpose has not interfered with the exercise of that right by the town and therefore any such use by any other person would not be inconsistent with the use of the ditch by the town. The right asserted by the town was distinct and independent of any right or use asserted by any other person. See McWhorter v. City of Clarksburg, 111 W.Va. 9, 161 S.E. 577.
What has been said also demonstrates that the use of the ditch by the town was not permissive, as that term is used in connection with the acquiring of an easement by prescription. The allegations are clearly to the effect that the ditch was constructed and has been maintained for a period of more than forty years "as a public drainage ditch". That being true, there was something different from a mere permissive use. Thus we find in the bill allegations plainly charging the existence of each necessary requisite for acquiring an easement by prescription. Hence, the allegations of the bill are not "vague, uncertain and indefinite".
Has there been an implied dedication of the ditch to public use? I think so. Since the existence of the ditch is not mentioned in the deeds or indicated on any recorded map, it is not contended, of course, that there was an express dedication. In Morlang v. City of Parkersburg, 84 W.Va. 509, 100 S.E. 394, 7 A.L.R. 717, the Court, Point 1, syllabus, held: "The law recognizes two classes of dedications of a street to a city, express and implied, the intent to dedicate being essential to both, though in the latter case it may be shown by acts of the owner justifying the public authorities in believing the intention exists, where they act upon such belief, even though the owner may never have actually intended a dedication." In the opinion, page 515, of 84 W.Va., page 397 of 100 S.E., the Court stated: "That an owner of real estate, under circumstances like this, may dedicate an easement therein to the public without any expression of his intent in that regard, or without any writing conveying the same, there is no doubt." In Miller v. City of Bluefield, 87 W.Va. 217, 104 S.E. 547, Point 3, syllabus, the Court held: "If private property is used by the public as a street or alley, and recognized by the public authorities as a public highway, by work done upon it, a dedication thereof is not thereby effected, unless the owner of the property acquiesces in such use and recognition for the statutory period of limitation." In Dickinson v. Rand, 102 W.Va. 574, 136 S.E. 42, the landowner solicited the county court to open and construct a road through his land, which the county court did. It was held that a public road was thereby established. In the instant case the acts of the landowner are more significant. The ditch was constructed and maintained by it until the incorporation of the town for the purpose of protecting and draining the streets theretofore dedicated by it to public use. After the incorporation of the town the ditch was maintained by the town, with full knowledge of the landowner, for the very same purpose, at the expense of the town, for more than thirty years. The land company recognized the public nature thereof not only by acquiescing in such use by the town but by selling lots along the same and along the former water course, the value of which lots would necessarily depend upon the continued use *295 of the ditch. The town expended funds in the maintenance thereof, under claim of right thereto, for more than thirty years.
Public use of the ditch for the prescriptive period raised a presumption that the ditch had been dedicated to public use. Under certain circumstances such a presumption will arise where the use is for a shorter period. 26 C.J.S., Dedication, § 17. In City of Staunton v. Augusta Corporation, 169 Va. 424, 193 S.E. 695, it was held that dedication may be implied from long use by the public. The case of MacCorkle v. City of Charleston, 105 W.Va. 395, 142 S.E. 841, 58 A.L.R. 231, relied upon by the majority, has no application to the facts of the instant case. There property owners partitioned certain lands, and, on a map recorded, designated "an alley 12 ft. wide". The partition deed provided that "Each of said grantees is to have full use and enjoyment of said alleys, so far as the same are adjacent to their respective lots, and full and free right of ingress and egress through and over said alleys to and from the public streets". The Court held that there was an express dedication to private use, not to public use, and that "the mere user by the public of a private alley in common with the owners of the alley does not show a dedication thereof to public use, or vest any right in the public to the way." Point 2, syllabus.
As I understand, the majority concedes that if the ditch is a natural water course, within the legal meaning of that term, or partakes of the nature thereof, the defendant would have no right to obstruct the flow of water through the same. The majority opinion simply dismisses the question of whether the so called ditch is a natural or an artificial water course with the statement that "the ditch is obviously a man made, artificial water course, * * *." It is not so clear to me that the so called ditch is either "man made" or "artificial". It had, of course, its origin in the action of man. The natural flow of water through the same for a period of over forty years may have not only changed its nature, size and appearance but changed its existence from what was originally a
mere ditch to a natural water course, depending upon circumstances. Prior to the construction of the ditch the waters now drained by it from the area of the streets and alleys of the town flowed in almost the opposite direction from that in which the waters now flow through the ditch. For the purpose of better draining these streets and alleys, and no doubt for the purpose of increasing the saleability of its lots, the land company constructed the ditch changing the direction of the flow of the waters. For over forty years the land company, or its successors, has sold its lots in conformity with the existence and use of the ditch, being lots along the streets drained by the ditch, as well as lots along the old water course. Property has been improved and the town has been built in accordance with the change. The use has been open and apparent to every one who sold, purchased or improved property in the vicinity of the ditch. For over thirty years the town, at its own expense, has cleaned out, worked and maintained the ditch for the protection of its streets and for the benefit of its residents and property owners.
I cannot see that the mere definition of a natural water course, as stated in the majority opinion, can be of much assistance, for the so called ditch, whether an artificial or a natural water course, "consists of a bed, banks and water, and in which water usually flows in a certain direction and by a regular channel with banks or sides." The manner of the creation of the water course does not control its classification. It is not unusual for owners of land, acting alone or jointly, to change the channel of a natural water course through their lands. The change may straighten the course of a stream, reclaim valuable land or better drain certain areas. In such circumstances I do not presume that it would be contended that the new channel, though man made, would not be the natural course for the flow of the water. It would be an artificial change in the water course, but a water course nevertheless.
All authorities seem to agree that a landowner may change the natural course of a stream flowing through his land. Of course this may not be done to the injury *296 of another. 56 Am.Jur., Waters, Section 14. In 56 Am.Jur., Waters, Section 15, we find this statement: "Where a landowner makes an artificial change in a watercourse, the view has been taken in some cases that other persons whose interests are affected by such change may acquire a right to insist on the continuance of the artificial condition, so as to preclude a restoration of the stream to its original channel or condition. Thus, it has been declared that if a landowner makes a change in the course of the stream which to all appearances is permanent, and holds out to the world the representation that such condition is permanent, he will be bound by his acts; and after the other persons have acquired rights by changing their positions on the faith of such representations, he will not be permitted to deny that they were true, or claim that the stream is not flowing in its true channel. * * *." See Sanderlin v. Baxter, 76 Va. 299, 444 Am.Rep. 165; Schumacher v. Brand, 72 Wash. 543, 130 P. 1145; Brown v. Honeyfield, 139 Iowa 414, 116 N.W. 731; Walters v. Hill, 87 Misc. 211, 149 N.Y.S. 545; Kallenberg v. Long, 39 Cal.App. 731, 179 P. 730.
In 27 R.C.L., Waters, Section 9, we find this statement: "It has often been decided, both in England and America, that watercourses made by the hand of man may have been created under such conditions that, so far as the rules of law and the rights of the public or of individuals are concerned, they are to be treated as if they were of natural origin; the principle is analogous to that under which other rights are acquired in real property by prescription or adverse use." In Ribordy v. Murray, 177 Ill. 134, 52 N.E. 325, the Court, in dealing with the question whether a ditch constitutes a water course, held that: "A fixed course over which surface water from adjoining land is uniformly discharged at a definite point is a `water course,' within the rule prohibiting one from filling up a water course so as to impede the flow from the adjoining land, though the course has no well-defined banks and beds." In Schwartz v. Nie, 29 Ind.App. 329, 64 N.E. 619, the Court held: "That a ditch has been constructed over
and along a natural water course, so that its waters are confined in the artificial channel, does not change its character as a natural water course." In Pippen v. Carpenter, 208 Ala. 1, 93 So. 878, the Court held: "A small stream well sunk and permanent held a water course giving rise to riparian rights, though it had at one time been ditched." In Lumley v. Village of Hamburg, 181 App.Div. 441, 170 N.Y.S. 462, the Court held: "Neighborhood drainage ditches, opened by common consent and used for more than 40 years, become water courses as fully as if they were not of artificial origin, and riparian owners have the same rights and duties as those on natural streams." See Hull v. Harker, 130 Iowa 190, 106 N.W. 629; Falcon v. Boyer, 157 Iowa 745, 142 N.W. 427; Rait v. Furrow, 74 Kan. 101, 85 P. 934, 6 L.R.A.,N.S., 157; Louisville & N. Railroad Co. v. Binkley, 1 Tenn.Ch.A. 531. Even a swale may be a natural water course. Thompson v. Andrews, 39 S.D. 477, 165 N.W. 9; Parizek v. Hinek, 144 Iowa 563, 123 N.W. 180; Lambert v. Alcorn, 144 Ill. 313, 33 N.E. 53. 21 L.R.A. 611. These cases and many more hold that landowners adjoining an artificial water course may have the same right and be charged with the same duties as if the water course had a natural origin. No case with facts comparable to the facts in the instant case has been found which holds that such a ditch should not be considered as a natural water course.
Under the holding of the majority, surface waters reaching the so called ditch, and thereby forming a water course, whether natural or artificial, must now, in legal contemplation at least, reverse their direction and find the original course abandoned over forty years ago, and flow through that course to its mouth, notwithstanding such original course may now lead through improved streets, yards, basements and parlors, thus destroying properties of those who have relied upon the continuous use of the ditch for more than forty years. This is equity in reverse.
It may be true that the allegations of the pleading could have been stated in language more definite. They could, of course, have been stated in different language. The *297 question for the Court, however, is whether the language used, together with reasonable inferences arising therefrom, informs as to each necessary element of the right claimed. I would not forget that we are commanded not to "regard any defect or imperfection" in a pleading "unless there be omitted something so essential to the action or defense that judgment, according to law and the very right of the cause, cannot be given." Code, 56-4-37.
Being of the views indicated, I respectfully dissent.
I am authorized to say that Judge LOVINS joins in this dissent.